1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
2                         SOUTHERN DIVISION

3     UNITED STATES OF AMERICA,

4                          Plaintiff,

5          -v-                          Case No. 12-20598

6     MICHAEL WINANS, JR.,

7                          Defendant./
      _____

8                          **PLEA HEARING**
                      **BEFORE HON. SEAN F. COX**
9                  United States District Judge
                         257 U.S. Courthouse
10              231 West Lafayette Boulevard
                     Detroit, Michigan 48226
11
                    **(Wednesday, October 3, 2012)**
12
      APPEARANCES:        ABED E. HAMMOUD, ESQUIRE
13                        Appearing on behalf of the Government.

14                        WILLIAM M. HATCHETT, ESQUIRE
                          Appearing on behalf of the Defendant.
15
      COURT REPORTER:     MARIE METCALF, CVR, CM
16                        Federal Official Court Reporter
                          257 U.S. Courthouse
17                        231 W. Lafayette Boulevard
                          Detroit, Michigan 48226
18                        metcalf_court@msn.com

19

20

21

22

23

24

25

**TABLE OF CONTENTS**

Proceedings – Wednesday, October 3, 2012

*U.S.A. v. Michael Winans, Jr.*

1          Detroit, Michigan

2          Wednesday, October 3, 2012

3          At about 3:16 p.m.

4                    *       *       *

5          DEPUTY COURT CLERK:  The United States District Court

6    for the Eastern District of Michigan is in session, the

7    Honorable Sean Cox, presiding.  Please be seated.

8          The Court calls case number 12-20598, United States

9    of America versus Michael Winans, Jr.

10         Counsel, your appearances for the record, please?

11         MR. HAMMOUD:  Good afternoon, Your Honor.  Abed

12   Hammoud on behalf of the United States.

13         MR. HATCHETT:  William Hatchett on behalf of the

14   defendant, Michael Winans, Your Honor.

15         THE COURT:  Good afternoon, Mr. Hammoud and good

16   afternoon, Mr. Hatchett.

17         Mr. Hatchett, it's my understanding that your client

18   wishes to plead guilty to Count One of the information with a

19   Rule 11; is that correct?

20         MR. HATCHETT:  That is correct, Your Honor.

21         THE COURT:  Sir, could you come up and come to the

22   podium, please?  And could you raise your right hand?

23         Do you affirm the testimony you're about to give will

24   be the truth, the whole truth and nothing but the truth?

25         DEFENDANT WINANS:  Yes, Your Honor.

*U.S.A. v. Michael Winans, Jr.*

```
 1              THE COURT:  I'm going to ask you some questions

 2   regarding the facts of the crime with which you're charged.

 3   You must tell the truth.  Any false answers can be used against

 4   you in a separate prosecution for perjury or false statement.

 5   Do you understand?

 6              DEFENDANT WINANS:  Yes, Your Honor.

 7              THE COURT:  Could you give me your full name, please?

 8              DEFENDANT WINANS:  Michael Winans, Jr.

 9              THE COURT:  And do you understand that you have a

10   constitutional right to remain silent and not incriminate

11   yourself?

12              DEFENDANT WINANS:  Yes, Your Honor.

13              THE COURT:  Do you want to give up that right now and

14   plead guilty to Count One of the information?

15              DEFENDANT WINANS:  Yes, Your Honor.

16              THE COURT:  First, I'm going to ask some background

17   questions to assure that you're competent to enter a plea at

18   this time.  How old are you?

19              DEFENDANT WINANS:  Thirty years old.

20              THE COURT:  How far did you go in school?

21              DEFENDANT WINANS:  Pardon me?

22              THE COURT:  How far did you go in school?

23              DEFENDANT WINANS:  Oh, I'm sorry.  Two years of

24   college.

25              THE COURT:  Okay.  And let me ask you this question.
```

*U.S.A. v. Michael Winans, Jr.*

1    Do you read, write and understand English?

2                DEFENDANT WINANS:  Yes, Your Honor.

3                THE COURT:  And are you now under the influence of

4    any medication, drugs or alcoholic beverages?

5                DEFENDANT WINANS:  No, Your Honor.

6                THE COURT:  All right.  Mr. Hatchett, do you believe

7    that your client is capable of entering a knowing plea?

8                MR. HATCHETT:  Yes, I do, Your Honor.

9                THE COURT:  Mr. Hammoud, do you have any position as

10   to whether or not the defendant's competent to enter a plea at

11   this time?

12               MR. HAMMOUD:  I believe he's competent, Your Honor.

13   Yes.

14               THE COURT:  All right.  Do you have the information

15   in front of you?

16               DEFENDANT WINANS:  Yes.

17               THE COURT:  Okay.  In Count One of the information,

18   you're charged under 18 U.S.C. Section 1343, with wire fraud.

19   It alleges that from approximately -- again, Count One alleges

20   that from approximately October 2007 through September 2008 in

21   the Eastern District of Michigan, southern division, that you

22   devised, schemed to defraud and to obtain money or property by

23   means of false and fraudulent material pretenses,

24   representations and promises.  And in order to execute your

25   scheme, you transmitted or caused to be transmitted writings,

*U.S.A. v. Michael Winans, Jr.*

1   signs, signals or pictures or sounds by means of wire in

2   interstate or foreign commerce, at all times relevant -- again,

3   this is all in the information, you operated the Winans

4   Foundation Trust and represented that the trust was a company

5   investing in crude oil bonds in Saudi Arabia.

6           The information continues.  You initially recruited

7   11 individuals whom you called shareholders in the trust to

8   invest in the crude oil bonds.  You required the shareholders

9   to solicit additional investors to incorporate businesses, to

10  hold funds provided by the investors they solicited and to send

11  investors' funds to the trust.  Victim investors resided in the

12  states of Michigan, Arkansas, Georgia, amongst other places.

13          As early as December 2007, you became aware that the

14  Saudi Arabian crude oil bond did not exist as an investment

15  vehicle, yet you did not disclose this fact to the existing

16  investors, and with the intent to defraud, continued to solicit

17  funds for the trust.

18          Each individual victim of your scheme to defraud

19  invested between 1,000 and 7,000 in Saudi Arabian crude oil

20  bonds.  As a result, you obtained over $8 million from more

21  than 1,000 victim investors, all of whom were led to believe

22  that they were investing in Saudi oil -- excuse me, Saudi

23  Arabian crude oil bonds that you knew -- that you well knew did

24  not exist.

25          You guaranteed the victim investors that the bonds

*U.S.A. v. Michael Winans, Jr.*

1    would yield returns of $1,000 to $8,000 within 60 days.  You

2    deposited the victim investors' funds into your own accounts.

3    You falsely explained to the victim investors that their funds

4    had to be deposited into your account because the Saudi Arabian

5    crude oil bonds were not being publically traded.  You

6    converted some of the victim investors' money to your own

7    personal use.

8          In addition, in classic Ponzi scheme fashion, you

9    gave some of your later victims' money to your earlier victims

10    and falsely represented to them that it was the return on their

11    investments as you had promised.

12          As part of this scheme to defraud, you also made

13    fraudulent material representations of promises to victim

14    investors who requested a return on their funds, lulling them

15    with false expectations that their money was secure but

16    temporarily unavailable.

17          In executing your scheme to defraud, you made or

18    caused to be made interstate wire transmissions, including, but

19    not limited to the following:  You sent an email from Michigan

20    to victim investors TH and JH in Texas which contained false

21    and fraudulent material information as to the existence and

22    validity of the Saudi Arabian crude oil bonds in order to

23    induce them to invest.

24          You also deposited into your own account at J.P.

25    Morgan Chase Bank in Michigan, an official bank check for

*U.S.A. v. Michael Winans, Jr.*

1  $39,000 drawn on the Bank of America in San Antonio, Texas,

2  which JH and -- sorry, which TH and JH had sent to you in

3  response to your solicitation for investors.  In doing so, you

4  caused Chase Bank in Michigan to send a signal by wire in

5  interstate commerce to the Bank of America in Texas to

6  facilitate the transfer of funds.

7          This charge carries with it a term of incarceration

8  of up to 20 years in prison, as well as a fine of up to

9  $250,000.

10         Mr. Hammoud, did I state the charge, as well as the

11 sentencing consequences of the charge correctly?

12         MR. HAMMOUD:  That's correct, Your Honor.  There's

13 also a forfeiture allegation part of the information, as well.

14         THE COURT:  Okay.  And, Mr. Hatchett, did I state the

15 charge, as well as the sentencing consequences of the charge

16 correctly?

17         MR. HATCHETT:  Yes, Your Honor.

18         THE COURT:  Mr. Winans, have you heard the charge

19 that has been made against you?

20         DEFENDANT WINANS:  Yes, Your Honor.

21         THE COURT:  And have you discussed the charge, as

22 well as sentencing consequences of this charge with your

23 attorney, Mr. Hatchett?

24         DEFENDANT WINANS:  Yes, Your Honor.

25         THE COURT:  And has Mr. Hatchett answered each and

*U.S.A. v. Michael Winans, Jr.*

 1    every question that you've had regarding the charge, as well as

 2    the sentencing consequences of the charge?

 3                   DEFENDANT WINANS:  Yes.

 4                   THE COURT:  Do you have any questions at all

 5    regarding the charge or the sentencing consequences of this

 6    charge?

 7                   DEFENDANT WINANS:  No, Your Honor.

 8                   THE COURT:  Okay.  Now, it's also my understanding

 9    that you have executed a Rule 11 Agreement, which has been

10    marked as Exhibit One; is that correct?

11                   DEFENDANT WINANS:  Yes, Your Honor.

12                   THE COURT:  And do you have that document in front of

13    you?

14                   DEFENDANT WINANS:  Yes.

15                   THE COURT:  Does your signature appear on that

16    document?

17                   DEFENDANT WINANS:  Yes, Your Honor.

18                   THE COURT:  At what page?

19                   DEFENDANT WINANS:  It's on page 16.

20                   THE COURT:  All right.  Before you signed that

21    document, did you read the document, as well as the attached

22    worksheets?

23                   DEFENDANT WINANS:  Yes, Your Honor.

24                   THE COURT:  And before you signed that document, did

25    you review and discuss the document as well as the attached

*U.S.A. v. Michael Winans, Jr.*

1    worksheets with Mr. Hatchett?

2                DEFENDANT WINANS:  Yes, Your Honor.

3                THE COURT:  Okay.  And before you signed that

4    document, did Mr. Hatchett answer each and every question that

5    you had regarding the Rule 11 Agreement, as well as the

6    attached worksheets?

7                DEFENDANT WINANS:  Yes, Your Honor.

8                THE COURT:  And do you have any questions at all

9    regarding anything contained in the Rule 11 Agreement, as well

10   as the attached worksheets?

11               DEFENDANT WINANS:  No, Your Honor.

12               THE COURT:  And has Mr. Hatchett answered each and

13   every question that you've had regarding your case?

14               DEFENDANT WINANS:  Yes, Your Honor.

15               THE COURT:  And are you satisfied with the advice and

16   service that Mr. Hatchett has provided to you in your case?

17               DEFENDANT WINANS:  Yes, Your Honor.

18               THE COURT:  Do you understand that if your guilty

19   plea is accepted, you will be deprived of valuable civil

20   rights, the right to vote, hold office, serve on a jury,

21   possess or be around firearms?

22               DEFENDANT WINANS:  Yes, Your Honor.

23               THE COURT:  Do you understand if I accept your plea

24   of guilty, you give up many important constitutional rights?  I

25   will go over some of the most important to make sure you

*U.S.A. v. Michael Winans, Jr.*

1  understand what you're giving up.

2          Do you understand you have the right to plead not

3  guilty?

4          DEFENDANT WINANS:  Yes, Your Honor.

5          THE COURT:  Do you understand you have the right to a

6  trial before the Court, which is me, the Judge, or a jury?  Do

7  you understand that?

8          DEFENDANT WINANS:  Yes, Your Honor.

9          THE COURT:  And do you understand at trial you're

10  presumed to be innocent and the government would have to prove

11  your guilt beyond a reasonable doubt?  Do you understand that?

12          DEFENDANT WINANS:  Yes.

13          THE COURT:  Do you understand you have the right to

14  question the witnesses who appear against you, either you

15  yourself or through your attorney?

16          DEFENDANT WINANS:  Yes, Your Honor.

17          THE COURT:  And do you understand you have the right

18  to have this Court order any witnesses you have for your

19  defense to appear at trial?  Do you understand that?

20          DEFENDANT WINANS:  Yes, I do.

21          THE COURT:  Do you understand that you have the right

22  to remain silent during your trial and not have your silence

23  used against you?

24          DEFENDANT WINANS:  Yes, Your Honor.

25          THE COURT:  Or to testify at your trial if you wish

11

*U.S.A. v. Michael Winans, Jr.*

1    to.  Do you understand that?

2            DEFENDANT WINANS:  Yes, I do.

3            THE COURT:  And again, understanding these rights, do

4    you want to give them up and plead guilty to Count One of the

5    information?

6            DEFENDANT WINANS:  Yes, Your Honor.

7            THE COURT:  Now, is your willingness to plead guilty

8    the result of a Rule 11 Plea Agreement that came about after

9    discussions between the government attorney, Mr. Hammoud, your

10   attorney, Mr. Hatchett, and yourself?

11           DEFENDANT WINANS:  Yes, Your Honor.

12           THE COURT:  And again, do you have Exhibit One in

13   front of you?

14           DEFENDANT WINANS:  Yes.

15           THE COURT:  And could you please turn to page two,

16   paragraph c(1), under "factual basis for guilty plea"?  Do you

17   see that paragraph?

18           DEFENDANT WINANS:  Yes.

19           THE COURT:  It reads,

20           "From approximately October 2007 through September

21           2008 in the Eastern District of Michigan, southern

22           division, that you devised a scheme to defraud and

23           to obtain money or property by means of false and

24           fraudulent material pretenses, representations and

25           promises.  And in order to execute your scheme,

*U.S.A. v. Michael Winans, Jr.*

1    you transmitted or caused to be transmitted

2    writings, signs, signals, pictures or sounds by

3    means of wire in interstate or foreign commerce,

4    that all times relevant in the information, you

5    operated the Winans Foundation Trust and

6    represented that the trust was a company investing

7    in crude oil bonds in Saudi Arabia.

8        You initially recruited 11 individuals whom

9    you called shareholders in the trust, to invest in

10   the crude oil bonds, you required the shareholders

11   to solicit additional investors to incorporate

12   businesses to hold the funds provided by the

13   investors they solicited and to send the investors

14   funds to the trust.  Victim investors resided in

15   the states of Michigan, Arizona and Georgia,

16   amongst other places.

17       As early as December 2007, you became aware

18   that the Saudi Arabian crude oil bond did not

19   exist as an investment vehicle, yet you did not

20   disclose this fact to the existing investors, and

21   with the intent to defraud, continued to solicit

22   funds for the trust.

23       Each individual victim of your scheme to

24   defraud invested between $1,000 and $7,000 in

25   Saudi Arabian crude oil bonds.  As a result, you

*U.S.A. v. Michael Winans, Jr.*

1     obtained over $8 million from more than 1,000

2     victim investors, all of whom were led to believe

3     that they were investing in Saudi Arabian crude

4     oil bonds that you well knew did not exist.  You

5     guaranteed the victim investors that the bonds

6     would return -- would yield returns of $1,000 to

7     $8,000 within 60 days.

8          You deposited the victim investors' funds

9     into your own bank accounts.  You falsely

10    explained to the victim investors that their funds

11    had to be deposited into your account because the

12    Saudi Arabian crude oil bonds were not being

13    publically traded.  You converted some of the

14    victim investors' money into your own personal

15    use.

16         In addition, in classic Ponzi scheme fashion,

17    you gave some of your later money -- excuse me,

18    some of the later victims' money to earlier

19    victims and falsely represented to them that it

20    was the return on their investments that you had

21    promised.

22         As a result of your scheme to defraud, you

23    also made fraudulent material representations or

24    promises to victim investors who requested a

25    return on their funds, lulling them with false

*U.S.A. v. Michael Winans, Jr.*

1               explanations that their money was secure, but

2               temporarily unavailable.

3                    In executing your scheme to defraud, you made

4               or caused to be made interstate wire transactions,

5               including, but not limited to the following:  You

6               sent an email from Michigan to victim investors TH

7               and JH in Texas which contained false and

8               fraudulent material information as to the

9               existence and ability of the Saudi Arabian crude

10              oil bonds in order to induce them to invest.

11                   You also deposited into your own account at

12              J.P. Morgan Chase Bank in Michigan in -- a bank

13              check for $39,000 drawn on the Bank of America in

14              San Antonio, Texas, which TH and JH had sent you

15              in response to your solicitation for investors.

16                   In doing so, you caused Chase Bank in Michigan to

17              send a signal by wire in interstate commerce to

18              Bank of America in Texas to facilitate the

19              transfer of funds."

20     Sir, did you hear what I just read to you?

21              DEFENDANT WINANS:  Yes, Your Honor.

22              THE COURT:  Was everything that I just read to you

23     true and accurate?

24              DEFENDANT WINANS:  Yes, Your Honor.

25              THE COURT:  Now, we're now on page five.  Could you

*U.S.A. v. Michael Winans, Jr.*

1    drop down to paragraph 2(b) on page five, which is entitled

2    "Agreed Guideline Range"?  Do you see that?

3                    DEFENDANT WINANS:  Yes.

4                    THE COURT:  Do you see in the second sentence where

5    it reads your guideline range is 151 to 188 months in prison?

6    Do you see that?

7                    DEFENDANT WINANS:  Yes.

8                    THE COURT:  Now, of course the guidelines are

9    advisory.  However, has Mr. Hatchett explained to you the

10   significance of guidelines in sentencing?

11                   DEFENDANT WINANS:  Yes, Your Honor.

12                   THE COURT:  Okay.  Now, could you please turn to page

13   ten, paragraph two, which is entitled, "Government's Authority

14   Regarding Substantial Assistance Determination?"  Do you see

15   that paragraph?

16                   DEFENDANT WINANS:  Yes.

17                   THE COURT:  And then do you see the paragraph

18   entitled, "Downward Departure," on the next page, page 11?

19                   DEFENDANT WINANS:  Yes, Your Honor.

20                   THE COURT:  Now, the government may bring a 5K motion

21   at the time of sentencing, as I understand from reading the

22   Rule 11 Agreement.

23                   Is that correct, Mr. Hammoud?

24                   MR. HAMMOUD:  There are other provisions, Your Honor,

25   that -- previous to this paragraph, that provide for some sort

*U.S.A. v. Michael Winans, Jr.*

1    of cooperation.  If that cooperation takes place and if it

2    brings fruition that falls within the definitions of the 5K, we

3    may then consider that.  So at this point there is nothing

4    there that leads me to believe there will be a 5K, but it's in

5    there, the provision is in there.  If the facts and the

6    developments warrant it, we will consider it.  But I want to

7    make sure the defendant understands it's totally our

8    discussion.

9              THE COURT:  Did you understand what Mr. Hammoud just

10   said?

11             DEFENDANT WINANS:  Yes, Your Honor.

12             THE COURT:  And you've discussed it, the 5K motion,

13   the downward departure, the issue of substantial assistance

14   with Mr. Hatchett, before you signed the Rule 11?

15             DEFENDANT WINANS:  Yes, Your Honor.

16             THE COURT:  Okay.  Now, the government may or may not

17   bring such a motion.  Do you understand that?

18             DEFENDANT WINANS:  Yes.

19             THE COURT:  Okay.  And it's up to the government to

20   determine whether or not you have provided the government

21   substantial assistance?

22             DEFENDANT WINANS:  Yes.

23             THE COURT:  Do you understand that?

24             DEFENDANT WINANS:  Yes, Your Honor.

25             THE COURT:  And do you understand that if the

*U.S.A. v. Michael Winans, Jr.*

1    government feels that you've provided substantial assistance,

2    that you've cooperated, they may make a motion and they may

3    make a recommendation regarding a certain departure from the

4    guidelines or the mandatory -- there's no mandatory minimum,

5    right?

6              MR. HAMMOUD:  No, Your Honor.

7              MR. HATCHETT:  No, Your Honor.

8              THE COURT:  Okay.  So they might make a request for a

9    departure from the bottom of the guidelines or the guidelines.

10   Do you understand that?

11             DEFENDANT WINANS:  Yes, Your Honor.

12             THE COURT:  Okay.  And have you discussed that issue

13   with Mr. Hatchett?

14             DEFENDANT WINANS:  Yes, Your Honor.

15             THE COURT:  Now, even if the government makes such a

16   motion, I don't have to grant it.  Do you understand that?

17             DEFENDANT WINANS:  Okay.

18             THE COURT:  I'm under no obligation to grant it.

19             DEFENDANT WINANS:  Right.  Okay, yes, Your Honor.

20             THE COURT:  And the amount of any departure, if I

21   decided that a departure was warranted, would be up to me; do

22   you understand that?

23             DEFENDANT WINANS:  Yes, Your Honor.

24             THE COURT:  Mr. Hatchett, did you review that and

25   discuss that issue with your client?

*U.S.A. v. Michael Winans, Jr.*

1      MR. HATCHETT:  Yes, I did, Your Honor.

2      THE COURT:  Okay.  Mr. Winans, do you have any

3   questions at all regarding what we just discussed or what I've

4   just said?

5      DEFENDANT WINANS:  No, Your Honor.

6      THE COURT:  Okay.  Now, could you please turn to page

7   13, paragraph seven, which is entitled, "Waiver of Appeal"?  Do

8   you see that paragraph?

9      DEFENDANT WINANS:  Yes.

10      THE COURT:  All right.  It reads,

11         "Defendant, being you, waives any right he may

12         have to appeal his conviction if the sentence

13         imposed does not exceed the maximum allowed by

14         part three of this agreement.

15            Defendant, being you, also waives any right

16         he may have to appeal his sentence if the sentence

17         imposed is within the guideline range as

18         determined by paragraph 2(b).

19            The government agrees not to appeal the

20         sentence, but retains its right to appeal any

21         sentence below that range."

22   Sir, did you hear what I just read to you?

23      DEFENDANT WINANS:  Yes, Your Honor.

24      THE COURT:  Any questions?

25      DEFENDANT WINANS:  No, Your Honor.

*U.S.A. v. Michael Winans, Jr.*

1          THE COURT:  And again, do you have any questions at

2     all regarding anything contained in the Rule 11 Agreement, as

3     well the attached worksheets?

4          DEFENDANT WINANS:  No, Your Honor.

5          THE COURT:  All right.  Mr. Hatchett, is there

6     anything that you wish to put on the record regarding the Rule

7     11 provisions?

8          MR. HATCHETT:  Yes, Your Honor.  I would like to voir

9     dire my client just briefly with respect to the issue of wire

10    fraud so he understands exactly what it entails.

11          Mr. Winans, you understand that the charge that

12    you're pleading guilty to is one of fraud, where you induced

13    people to send you money by means of false representations; is

14    that correct?

15          DEFENDANT WINANS:  Yes.

16          MR. HATCHETT:  And do you understand that under the

17    terms and conditions of the Rule 11 Plea Agreement you

18    acknowledge that you did receive these funds?

19          DEFENDANT WINANS:  Yes.

20          MR. HATCHETT:  I have no further questions, Your

21    Honor.

22          THE COURT:  Okay.  Mr. Hammoud, is there anything

23    that you wish to put on the record regarding the Rule 11

24    provisions?

25          MR. HAMMOUD:  No, Your Honor.

*U.S.A. v. Michael Winans, Jr.*

1      THE COURT:  Okay.  Now, Mr. Winans, apart from what

2   is contained in the Rule 11 Agreement, which we just reviewed,

3   have you been promised by this Court, which is me, the Judge,

4   the attorney for the government, Mr. Hammoud, or your attorney,

5   Mr. Hatchett, that you will be placed on probation or receive

6   any specific sentence in return for pleading guilty to Count

7   One of the information?

8      DEFENDANT WINANS:  Could you repeat that?  I'm sorry.

9      THE COURT:  Sure.  Apart from what is contained in

10   the Rule 11 Agreement, which we just reviewed, have you been

11   promised by the Court, which is me, the Judge, or the attorney

12   for the government, Mr. Hammoud, or your attorney, Mr.

13   Hatchett, that you will be placed on probation or receive any

14   specific sentence in return for pleading guilty to Count One?

15      DEFENDANT WINANS:  No, Your Honor.

16      THE COURT:  Are you now -- Mr. Hammoud, do you --

17      MR. HAMMOUD:  I'm sorry, Your Honor.  When the Court

18   gave me a chance to talk about the Rule 11, I forgot to mention

19   page seven does have the restitution agreement that would be

20   ordered by the Court after it's been determined.  It's right

21   now not determined, per se, but it's going to be in the range

22   that we talked about, the losses, and we're going to provide

23   the Court and probation with as much information as we can to

24   determine, but the defendant has to understand he has to pay --

25   and he will have a chance to look at what we're proposing to

*U.S.A. v. Michael Winans, Jr.*

1    the Court.

2           THE COURT:  Sir, you understand you're going to have

3    to pay restitution to the victims?

4           DEFENDANT WINANS:  Yes, Your Honor.

5           THE COURT:  Is that agreeable to you?

6           DEFENDANT WINANS:  Yes, Your Honor.

7           THE COURT:  All right.

8           MR. HATCHETT:  Your Honor, may we have just a

9    conference at sidebar, just one issue we discussed in chambers?

10          THE COURT:  Sure.

11               (Sidebar conference held off the record)

12          THE COURT:  Okay.  Mr. Winans, are you now on

13    probation or parole in another matter?

14          DEFENDANT WINANS:  No, Your Honor.

15          THE COURT:  Has anyone tried to force you to plead

16    guilty to Count One by any mistreatment or pressure?

17          DEFENDANT WINANS:  No, Your Honor.

18          THE COURT:  Are you pleading guilty freely and

19    voluntarily to Count One because you are guilty and it is your

20    choice to plead guilty to Count One?

21          DEFENDANT WINANS:  Yes, Your Honor.

22          THE COURT:  Mr. Winans, could you tell me what it is

23    that you did which makes you believe you're guilty under Count

24    One of wire fraud?

25          DEFENDANT WINANS:  Made false representations that

*U.S.A. v. Michael Winans, Jr.*

1    caused others to send me wires, wire money.

2         THE COURT:  Okay.  From apparently October 2007

3    through September 2008, you engaged in certain conduct?

4         DEFENDANT WINANS:  Pardon me?

5         THE COURT:  You engaged in certain conduct, correct?

6         DEFENDANT WINANS:  Correct.

7         THE COURT:  Okay.  Tell me what you did.

8         DEFENDANT WINANS:  I was in -- I want to say in

9    business with a gentleman by the name of Tim Hunt.  And Tim

10   Hunt had an investment that he presented to me and told me

11   that, you know, it was going to yield certain amounts of money

12   and I could bring people into the investment.

13         And so I immediately did so.  Tim Hunt was someone

14   that was a recommendation of a friend that I had had in years

15   past.  I brought people into the investment under the notion

16   that it was a Saudi Arabian crude oil bond.

17         THE COURT:  Okay.  Again, what was the investment?

18         DEFENDANT WINANS:  It was investing in crude oil

19   bonds.

20         THE COURT:  Okay.

21         DEFENDANT WINANS:  So that was around middle to the

22   end of October of 2007.

23         THE COURT:  Okay, continue.

24         DEFENDANT WINANS:  So I began to bring people into

25   the investment.  And toward the end of December, I was told by

*U.S.A. v. Michael Winans, Jr.*

1    this Timothy Hunt that the investment was over.

2            At that time there were monies that he had owed back

3    to me to give to investors.  There was money that I had on hand

4    for people who wanted to get into the investment.  And so, you

5    know, I was in a sticky situation.  So I'm like, "Well, what do

6    you mean that the investment is over?"

7            He said, "It's over, you know, money has been lost

8    and --" and so after that took place, I did not disclose to

9    investors that the investment was over and so I began to try to

10   find other ways --

11           THE COURT:  When you say, "the investment was over,"

12   do you mean that this investment did not exist?

13           DEFENDANT WINANS:  Pardon me?

14           THE COURT:  When you say, "the investment was over,"

15   do you mean to tell me that this investment in, as I understand

16   crude oil bonds in Saudi Arabia, did not exist?

17           DEFENDANT WINANS:  I was made --

18           THE COURT:  There was no such -- that you were

19   advised that there was no such investment?

20           DEFENDANT WINANS:  I was advised that the investment

21   was over.

22           MR. HATCHETT:  May we have just one second, Your

23   Honor?

24           THE COURT:  Sure, okay.

25               (Discussion off record)

*U.S.A. v. Michael Winans, Jr.*

1      DEFENDANT WINANS:  I was aware that the investment

2  was not a real investment and I continued to take funds.

3      THE COURT:  Okay.  Did you make certain statements to

4  investors subsequently?

5      DEFENDANT WINANS:  Yes, I did.

6      THE COURT:  Okay.  And what statements did you make

7  to investors subsequent to the time that you found out that

8  this was not a real investment?

9      DEFENDANT WINANS:  I did not tell them that it was

10  not a real investment.  I just continued to receive funds under

11  the prior notion that it was a solid investment, a real

12  investment.

13      THE COURT:  Well, were there additional investors

14  after you were advised --

15      DEFENDANT WINANS:  Yes.

16      THE COURT:  -- that this investment did not exist?

17      DEFENDANT WINANS:  Yes, Your Honor.  Yes.

18      THE COURT:  Okay.  And did you make certain

19  materially false or fraudulent statements to these individuals

20  or representations?

21      DEFENDANT WINANS:  Yes, Your Honor.

22      THE COURT:  And what did you say?

23      DEFENDANT WINANS:  That that was an investment --

24  that this investment still did exist and that they could

25  participate in the investment.

*U.S.A. v. Michael Winans, Jr.*

1          THE COURT:  And did you know that the statements you

2    were making were not true?

3          DEFENDANT WINANS:  I did, yes.

4          THE COURT:  And when you made these statements did

5    you intend to deceive or cheat these investors?

6          DEFENDANT WINANS:  It wasn't my intention to do so,

7    but in not telling the truth and covering up, yes, I did.

8          THE COURT:  So was it your intent -- so did you

9    knowingly deceive these investors?

10         DEFENDANT WINANS:  Yes.

11         THE COURT:  And did you tell them that this was a

12   viable investment when you knew that it did not exist?

13         DEFENDANT WINANS:  Yes, Your Honor.

14         THE COURT:  And how did you communicate with these

15   investors, these investors that you told that there was a

16   viable investment that you knew did, in fact, not exist?  How

17   did you communicate with these individuals?

18         DEFENDANT WINANS:  You mean, like in what way or what

19   did I say?

20         THE COURT:  Well, how did you communicate?

21         DEFENDANT WINANS:  It was through the shareholders

22   that were a part of the investment.

23         THE COURT:  Well, did you use a certain means of

24   communication that involved certain interstate communication?

25         DEFENDANT WINANS:  Wire transfers, yes.

*U.S.A. v. Michael Winans, Jr.*

1        THE COURT:  Okay.  So you used wire transfers.  Tell

2   me about that, tell me about these wire transfers.

3        DEFENDANT WINANS:  There were some investors who

4   wired money, and other monies that were wired to them as well.

5        THE COURT:  Okay.  And were there monies that were

6   wired to you from other states?

7        DEFENDANT WINANS:  Yes, Your Honor.

8        THE COURT:  And when you made these statements to

9   individuals regarding this investment in Saudi crude bonds,

10  crude oil bonds that you knew did not exist, where were you

11  located?

12       DEFENDANT WINANS:  In Michigan.

13       THE COURT:  In what part of Michigan?

14       DEFENDANT WINANS:  In West Bloomfield, Michigan.

15       THE COURT:  Okay.  And were these investors located

16  outside the State of Michigan?

17       DEFENDANT WINANS:  There were some that were.

18       THE COURT:  Okay.  In fact one in Texas?  Is that

19  what I understand from what you told me earlier?

20       DEFENDANT WINANS:  Yes.

21       THE COURT:  Mr. Hammoud, are you satisfied with the

22  factual basis as to Count One of the information?

23       MR. HAMMOUD:  Yes, Your Honor, we're satisfied.

24       THE COURT:  Mr. Hatchett, are you satisfied with the

25  factual basis as to Count One of the information?

*U.S.A. v. Michael Winans, Jr.*

1           MR. HATCHETT:  Yes, Your Honor.

2           THE COURT:  Now, again, Mr. Winans, is it your

3    decision, your choice, to plead guilty to Count One?

4           DEFENDANT WINANS:  Yes, Your Honor.

5           THE COURT:  Is this what you want to do?

6           DEFENDANT WINANS:  Yes, Your Honor.

7           THE COURT:  The Court finds that Mr. Winans' plea has

8    been made knowingly, freely and voluntarily and the elements of

9    the offense of wire fraud under Count One of the information

10   has been made out by statements here in open court.

11          The guilty plea is accepted.  The Rule 11 is taken

12   under advisement and we'll give him a sentence date of?

13          DEPUTY COURT CLERK:  His sentencing date is February

14   27th at two p.m.

15          THE COURT:  Okay.  Any other issues, Mr. Hammoud?

16          MR. HAMMOUD:  Your Honor, earlier today the defendant

17   was arraigned downstairs and placed on personal bond.  And he's

18   allowed to be supervised in the State of Maryland.  I would ask

19   the Court if it's possible, considering the extent of the

20   guidelines the defendant is facing the potential of several

21   years in prison and that's his first felony that we know of,

22   and that he's new, to so speak, to the felony world and to the

23   prison world, potentially, if the Court may order as a

24   condition of that bond, additionally, a psychological

25   evaluation to ensure his well-being while he's awaiting his

*U.S.A. v. Michael Winans, Jr.*

```
 1   sentence, that everything is fine?
 2            THE COURT:  Mr. Hatchett, any objection?
 3            MR. HATCHETT:  I have no objection, Your Honor.
 4            THE COURT:  All right.  I will order that.
 5            MR. HATCHETT:  Very well.
 6            THE COURT:  Okay.  Any other issues, Mr. Hatchett?
 7            MR. HATCHETT:  None at this time, Your Honor.
 8            THE COURT:  Mr. Hammoud?
 9            MR. HAMMOUD:  Nothing, Your Honor.
10            THE COURT:  All right, thank you.
11            MR. HAMMOUD:  Thank you.
12            DEPUTY COURT CLERK:  All rise.
13                 (Court in recess at 3:47 p.m.)
14                      *      *      *
15
16
17
18
19
20
21
22
23
24
25
```

*U.S.A. v. Michael Winans, Jr.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15                    **C E R T I F I C A T I O N**

16          I, Marie J. Metcalf, Official Court Reporter for the

17  United States District Court, Eastern District of Michigan,

18  Southern Division, appointed pursuant to the provisions of

19  Title 28, United States Code, Section 753, do hereby certify

20  that the foregoing is a correct transcript of the proceedings

21  in the above-entitled cause on the date hereinbefore set forth.

22          I do further certify that the foregoing transcript

23  has been prepared by me or under my direction.

24  s\Marie J. Metcalf                        04-29-13

25  Marie J. Metcalf, CVR, CM                 (Date)