1                          UNITED STATES DISTRICT COURT
                           EASTERN DISTRICT OF MICHIGAN
2                               SOUTHERN DIVISION

3    UNITED STATES OF AMERICA,

4                              Plaintiff,

5         -v-                              Case No. 12-20598

6    MICHAEL WINANS, JR.,

7    _____   Defendant./

8                           **SENTENCING HEARING**
                         **BEFORE HON. SEAN F. COX**
9                        United States District Judge
                              257 U.S. Courthouse
10                     231 West Lafayette Boulevard
                          Detroit, Michigan 48226
11
                       **(Wednesday, February 27, 2013)**
12
     APPEARANCES:          ABED E. HAMMOUD, ESQUIRE
13                         Appearing on behalf of the Government.

14                         WILLIAM M. HATCHETT, ESQUIRE
                           Appearing on behalf of the Defendant.
15
     COURT REPORTER:       MARIE METCALF, CVR, CM
16                         Federal Official Court Reporter
                           257 U.S. Courthouse
17                         231 W. Lafayette Boulevard
                           Detroit, Michigan 48226
18                         metcalf_court@msn.com

19

20

21

22

23

24

25

1                      **TABLE OF CONTENTS**

2

3    Proceedings – Wednesday, February 27, 2013

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*U.S.A. v. Michael Winans, Jr.*

1              Detroit, Michigan

2              Wednesday, February 27, 2013

3              At about 2:09 p.m.

4                        *      *      *

5         DEPUTY COURT CLERK:  All rise.  The United States

6    District Court for the Eastern District of Michigan is in

7    session, the Honorable Sean Cox, presiding.  Please be seated.

8         The Court calls case number 12-20598, United States

9    of America versus Michael Winans, Jr.  Counsel, your

10   appearances for the record please.

11        MR. HATCHETT:  For the record, Your Honor, William

12   Hatchett.  I appear on behalf of Michael Winans, Jr.

13        THE COURT:  All right.  Good afternoon, Mr. Hatchett.

14        MR. HATCHETT:  Good afternoon, Your Honor.

15        MR. HAMMOUD:  Good afternoon, Your Honor.  Abed

16   Hammoud on behalf of the United States.

17        THE COURT:  And good afternoon, Mr. Hammoud.

18        And I guess you have the agent in charge here, as

19   well?

20        MR. HAMMOUD:  Yes, Your Honor, Special Agent Sean

21   Miller from the FBI.

22        SPECIAL AGENT MILLER:  Good afternoon, sir.

23        THE COURT:  Good afternoon.

24        All right.  I have carefully reviewed the presentence

25   report, the Rule 11.  I have carefully reviewed the letters

*U.S.A. v. Michael Winans, Jr.*

1    from the victims of the Ponzi scheme.  I've carefully reviewed

2    the letters from Mr. Winans' family and friends.  I've

3    carefully reviewed the government's sentencing memorandum as

4    well as the defendant's sentencing memorandum.

5              Now, of course the guidelines are advisory.  Have

6    they been correctly scored at 151 to 188?

7              MR. HAMMOUD:  Correctly on behalf of the government,

8    Your Honor.

9              MR. HATCHETT:  They are, Your Honor.

10             THE COURT:  Okay.  And of course the guidelines with

11   respect to the fine have been noted as $17,500 to $175,000.  Is

12   that correct as well?

13             MR. HAMMOUD:  Correct, Your Honor.

14             MR. HATCHETT:  That's correct Your Honor.

15             THE COURT:  The plea has been accepted.  The Rule 11

16   has not been accepted.  Is there a motion for the Court to

17   accept the Rule 11?

18             MR. HAMMOUD:  I would move that the Court accepts the

19   Rule 11.

20             MR. HATCHETT:  I join in the motion, Your Honor.

21             THE COURT:  All right, the motion is granted.

22             Mr. Hatchett, have you had the opportunity to review

23   the presentence report with your client?

24             MR. HATCHETT:  I have, Your Honor.  The record should

25   reflect that I have spent a great deal of time with Mr. Winans.

*U.S.A. v. Michael Winans, Jr.*

1    We have gone thoroughly through the report and we have sent to

2    the probation department any objections that we had to the

3    report, which objections at this point we're going to withdraw.

4            THE COURT:  And it's my understanding, and please

5    correct me if I'm wrong, the objection involved the issue of

6    restitution.  And currently, restitution has been correctly

7    noted at $4,796,522; is that correct?

8            MR. HATCHETT:  That is correct, Your Honor.

9            THE COURT:  Mr. Hammoud?

10           MR. HAMMOUD:  That's correct, Your Honor.  Would you

11   want me to wait to go into the restitution details or do it

12   now?  I have a couple of items, that's all.

13           THE COURT:  It's your call.

14           MR. HAMMOUD:  I can do it right now, since this came

15   up.  We submitted to the Court, and defense counsel and

16   probation, a report with the details of the names of the

17   victims and the amounts as known as of today.

18           I also let the Court know actually in our sentencing

19   memorandum that there may be additional victims we did not know

20   about who did not know about the hearing, who did not come

21   forward, and because of the publicity surrounding the case,

22   they may be coming forward.

23           If there is additional, we will submit them to the

24   Court as soon as possible and give copy to counsel to give him

25   a chance to contest them if they like to.  At this point, we

*U.S.A. v. Michael Winans, Jr.*

1    have 612 victims who gave amounts, and that's how we arrived to

2    this amount, Your Honor.

3              THE COURT:  Mr. Hatchett?

4              MR. HATCHETT:  Yes, Your Honor.  The record should

5    also reflect that we've had an extensive amount of conversation

6    regarding this issue.

7              And although the government is aware of the fact that

8    given the structure of this alleged scheme, that the defendant,

9    Mr. Winans, is not in a position to even know a great number of

10   the people who have submitted claims.  But we suggest to the

11   Court that we leave the issue open with respect to any further

12   --

13             THE COURT:  But as of today it is, $4,796,522; is

14   that correct?

15             MR. HATCHETT:  That is correct, Your Honor.

16             MR. HAMMOUD:  That's correct, Your Honor.  Yes.

17             THE COURT:  Okay.  So Mr. Hatchett, back to you.

18   It's my understanding you've had the opportunity to review the

19   presentence report with your client.

20             So my next question to you is, do you have any

21   objections, additions, corrections or deletions that you wish

22   to bring to my attention?

23             MR. HATCHETT:  No, Your Honor.

24             THE COURT:  Mr. Hammoud, have you had the opportunity

25   to review the presentence report?

*U.S.A. v. Michael Winans, Jr.*

1          MR. HAMMOUD:  Yes, Your Honor, we have.

2          THE COURT:  Any do you have objections, additions,

3     corrections or deletions that you wish to bring to my

4     attention?

5          MR. HAMMOUD:  No, Your Honor, other that the

6     amendment we've filed -- not the amendment, but the details of

7     restitution.

8          THE COURT:  Yes, but I guess there's no issue now,

9     correct?

10         MR. HAMMOUD:  Yes, Your Honor.

11         THE COURT:  Mr. Winans, have you had the opportunity

12    to review the presentence report with Mr. Hatchett?

13         DEFENDANT WINANS:  Yes, Your Honor.

14         THE COURT:  And do you have any objections,

15    additions, corrections or deletions that you wish to bring to

16    my attention?

17         DEFENDANT WINANS:  No, Your Honor.

18         THE COURT:  All right.  Mr. Hatchett, is there

19    anything you wish to say on behalf of your client before I

20    impose sentence?

21         MR. HATCHETT:  Yes, Your Honor.  May I approach the

22    podium?

23         THE COURT:  Sure.

24         MR. HATCHETT:  Your Honor, with respect to the issues

25    involved in this case, as the Court has noted there was a Rule

*U.S.A. v. Michael Winans, Jr.*

1   11 that has been entered and the Court has accepted that Rule

2   11.

3          And contained in that document is the government's

4   outline of what they believe this case involved.  And we are

5   not here to in any way impugn the integrity of any person who

6   is affected or impacted by this scheme.

7          As the Court has duly noted, and I appreciate the

8   fact that the Court gave us an opportunity to discuss this

9   matter in chambers.  And having spent a considerable amount of

10  time with this Court in the last two months, I am satisfied

11  that you have thoroughly reviewed everything that we have

12  submitted.

13         Having said that, one of the things that the Court

14  outlined during the course of our discussion was the fact that

15  the Court is aware of the fact that this scheme did not emanate

16  with my client.

17         However, as noted in the presentence investigation

18  and also in the defendant's sentencing position, when he became

19  aware of it he did not do the honorable thing and stop it.

20  That I know is disturbing to the Court and something that my

21  client has to be held accountable for.

22         Having said that, the sea of anger that has been

23  precipitated or caused by this is something that cannot be

24  ignored.  And I know many of the defendant's family members

25  very well for many years and I know them to be persons of

*U.S.A. v. Michael Winans, Jr.*

1    stature and integrity.  And they are extremely upset and

2    disappointed at the events that bring us before the bar today.

3         The defendant himself has had an exemplary young

4    life.  He's a young man, but has been very successful in a lot

5    of things, including music, where he was honored to even

6    receive a Grammy award -- a nomination for a Grammy.  He has

7    done many good things, as noted in the many letters of support

8    that you have received.

9         However, the victims of this scheme have called out

10   to the probation department and to the government to seek

11   redress.  The question becomes how does the Court to do that

12   and what measure of punishment is necessary in order to deter

13   others from committing like acts and to punish the defendant

14   for his conduct pursuant to the objectives of 3553 of the

15   United States Code?

16        I submit to the Court that having dealt with this

17   young man for many years, and having had the input of his

18   family in terms of the support they have given him, it is well

19   within the Court's discretion to show mercy and to give him an

20   opportunity to try to right some of the wrong that he has done.

21        He will continue to be open, and as noted by Mr.

22   Hammoud during the course of our discussion, he has been

23   extremely cooperative.  How much that impacts this Court is

24   something that can only be determined after the Court hears

25   both sides of the issue.

*U.S.A. v. Michael Winans, Jr.*

1        I submit to the Court that having known the family

2    and the shame that he has brought upon them, he is extremely

3    remorseful and he regrets to this day the acts that led him to

4    involve himself in this insidious endeavor.

5        I ask that the Court look at the guidelines and

6    interpret them in a way that is compassionate, but also at the

7    same time metes out an appropriate sentence.

8        That's all I can ask of the defendant.  And as

9    indicated, he will continue, and I assure you he will continue

10   to assist the government in every way possible to right this

11   wrong and to try to get these people some measure of

12   compensation if at all possible.

13       The only other issue that I have to indicate -- that

14   I would like to indicate to the Court is, Mr. Winans has asked

15   for an opportunity to address this Court and I have advised him

16   that that is his right, but that he should look at it from a

17   perspective of understanding that no words can be said that's

18   going to change the course of conduct that has led us to this

19   day.

20       I'd ask that the Court take into consideration the

21   sentencing memorandum that we filed and take into consideration

22   the fine investigation that the government did, and I have to

23   commend them for that, because they did spend a lot of time on

24   this case.  And I know that they did it not from a perspective

25   of being vindictive, because I've had an opportunity to work

*U.S.A. v. Michael Winans, Jr.*

1   with the agent and with the U.S. attorney, and I know that they

2   are here because they must be.

3          But I'd ask the Court to take all factors that I've

4   outlined in the sentencing memorandum into consideration in

5   passing judgment.  Thank you, Your Honor.

6          THE COURT:  Thank you, Mr. Hatchett and I certainly

7   will.

8          MR. HATCHETT:  Thank you.

9          THE COURT:  Mr. Hammoud, is there anything that you

10  wish to say on behalf of the government before I impose

11  sentence?

12         MR. HAMMOUD:  Yes, Your Honor.  Before I do that, did

13  I understand that Mr. Hatchett clearly said that the defendant

14  waives his right to address the Court today?

15         THE COURT:  No, no, I think he --

16         MR. HATCHETT:  He wants to, but I -- yes, he does

17  want to address the Court.

18         MR. HAMMOUD:  So he would?

19         MR. HATCHETT:  Yes.

20         MR. HAMMOUD:  Okay.  I didn't understand.

21         MR. HATCHETT:  I'm sorry.

22         MR. HAMMOUD:  Your Honor, I do have -- I'd like to

23  address the Court.

24         THE COURT:  How about if -- you have three

25  individuals who wish to speak, three victims; is that correct?

*U.S.A. v. Michael Winans, Jr.*

1          MR. HAMMOUD:  Two actually, Your Honor.  Do you want

2   them to speak before I do?

3          THE COURT:  I think that might be a good way of doing

4   it.

5          MR. HAMMOUD:  Yes, Your Honor.  I'd like to call Ms.

6   Tara Hurt.  To the podium Your Honor?

7          THE COURT:  Yes, please.  And please speak up loudly

8   and just relax, okay, and I know this is difficult for you.  So

9   first of all, give us your name, please.

10          MS. HURT:  My name is Tara Hurt.

11          THE COURT:  You may proceed.  Thank you.

12          MS. HURT:  Your Honor, this is a day that I wish

13   would never have happened.  I would prefer not to be here,

14   period.  What I would like to say is that myself and my

15   husband, we've experienced just turmoil for the last five

16   years.  Our family, our friends have been affected by this

17   whole thing.  Both of our mothers who were both senior

18   citizens, my mother passed away September 19th without ever

19   recovering the money that she used thinking it would help her.

20          We have many family members, many close friends, many

21   coworkers of my husband's that have been affected.  Marriages

22   have been ruined.  Our marriage was deeply affected, almost

23   ruined as well.

24          My husband has experienced a lot of reaction from

25   coworkers on his job.  His vehicle was vandalized in the

*U.S.A. v. Michael Winans, Jr.*

1    parking lot.  He was questioned on a daily basis.  He couldn't

2    get through his shift at work without being approached by many

3    coworkers asking questions that he didn't have answers to.

4            And I just think that it's really sad that we even

5    have to be here and have to go through what we've gone through

6    these last five years.  It's just been -- it's something that I

7    can't even explain.  It's been -- it's affected us emotionally,

8    physically, you know, mentally.

9            It's something that I personally thought I would

10   never have to go through.  I didn't think that I would ever

11   fall for anything like this.  I mean, if you asked me, I would

12   never ever, in a million years think that this was something

13   that I would be doing right now.  It's just really sad.

14           And I'm not here to have an effect on the judgment,

15   because I know that overall God is the judge.  And I just need

16   to express how I feel, what we've gone through.  And I know

17   there's lots of marriages that have been destroyed.  I've been

18   told this and I have seen this.  So I know lots of family

19   members that won't even speak.

20           THE COURT:  And it's actually reflected in different

21   victims letters that I have read, so I know what you're saying.

22           MS. HURT:  Yes, yeah.  I know family members that are

23   not even speaking to their other family members because of it.

24   And if you don't have your family, what do you have?  Us

25   personally, our family and our close friends, they know that we

*U.S.A. v. Michael Winans, Jr.*

 1    are people of integrity and we haven't had that problem, but we

 2    did because of what we experienced and what we had to go

 3    through a daily basis.  It did almost result in the loss of our

 4    relationship and our marriage.

 5              THE COURT:  Okay.  Thank you very much for coming in.

 6              MS. HURT:  Thank you.

 7              THE COURT:  And I have heard you, okay?

 8              MS. HURT:  Thank you.

 9              MR. HAMMOUD:  I'll have Mr. Calvin Jackson --

10              THE COURT:  All right.  Mr. Jackson?

11         Mr. Jackson, come on up to the podium.  And relax,

12    take a deep breath, and first of all, give us your name.

13              MR. JACKSON:  Calvin Jackson, Jr.

14              THE COURT:  Okay.

15              MR. JACKSON:  This too is really tough for me as

16    well.  I'm torn both ways, because I looked at him, I trusted

17    him, I confided a lot in him.

18         My family was affected horribly.  Had to move out of

19    our home, had to turn my truck in.  My father and I was best

20    friends, talked every single day.  But when my father came into

21    this scheme, he stopped talking to me.  My father and his wife

22    separated.  Then my wife had issues.  So many people were

23    affected by somebody that I trusted dearly.  So many death

24    threats to my life.  I went to my door one time with my

25    one-year-old daughter in my hand and a guy was on my porch with

                                                                    14

*U.S.A. v. Michael Winans, Jr.*

1    a hoodie on, demanding -- questions, asking me where he lived.

2    And because I trusted him, I didn't tell the guy.  Because I

3    believed him, I didn't tell the guy.  Because I loved his

4    family, I didn't tell the guy.  I broke bread with them.  That

5    means something to me.

6           This is the hardest day of my life, because of who I

7    am, I have to forgive him.  Me, personally, I have to forgive

8    him because of who I am.

9           But it's affected so many people, I feel so bad for

10   him, I feel so bad for us.  I'm torn.  But what I do know is,

11   if we all somehow put this behind us, you know, we can move on,

12   pray for each other and hopefully nothing like this ever

13   happens again to anybody.

14          THE COURT:  All right.  Thank you very much for

15   coming in.  Okay?

16          Mr. Hammoud?

17          MR. HAMMOUD:  Yes, Your Honor.

18          As you mentioned earlier, I had said to you that

19   three people will speak.  You notice that only two spoke.  The

20   other -- actually there are two other people too, and they said

21   they were too emotional to be able to speak.  And I know the

22   Court is aware of the emotions in this case because the Court

23   read more than 50 victim impact statements that we submitted.

24   And the Court sees that there are more than 50 victims here

25   attending.  And I talked to them and expressed to them that the

*U.S.A. v. Michael Winans, Jr.*

1    Court does read the impact statements, so they don't all need

2    to speak to you, but they know --

3            THE COURT:  I have read all the victim impact

4    statements.

5            MR. HAMMOUD:  That they know their voice are heard

6    through the documents and also through all the information you

7    have.

8            Your Honor, of course we stand by everything we wrote

9    in our sentencing memorandum, so not going to repeat

10   everything.  But there are a few things I'd like to bring the

11   Court's attention to as you ponder what sentence you give the

12   defendant.  Of course, our position is to give them a sentence

13   within the guidelines.

14           As you heard from the last two people who spoke here,

15   this is not -- this didn't just impact peoples' pockets and

16   their livelihood.  People were threatened, people were scared,

17   marriages broke up, families have broken up.

18           And the reason is -- and I know the Court is aware of

19   the facts, but without going over too much over the facts, the

20   reason is, the scheme was organized, the defendant would have

21   people go and recruit other people for him for people to invest

22   in his scheme, which means in many instances people took their

23   life savings and gave them to a friend or a relative who was

24   not the defendant, who gave in turn to the defendant and

25   vice-versa.

*U.S.A. v. Michael Winans, Jr.*

1    People went and recruited, because if you believe

2  that something is a good investment, these are the people who

3  believed in the defendant, the first thing you want to do is

4  include the people you love, not the people you hate.  So

5  people went and recruited people they loved to say, "Give me

6  money.  I'm going to invest it for you with Michael Winans."

7    And of course, using the Winans -- you know Michael

8  Winans' reputation and the good reputation of the family, the

9  people started giving their relatives and friends.

10    What it all came out that this was a scheme, this was

11  a fraud, people were not necessarily only angry at the

12  defendant.  They were angry at the people who they loved

13  before, who they trusted, who were their friends, the people

14  who they actually handed the cash to before it went to the

15  defendant.

16    That's why you hear many people, through their

17  statements and today saying, "I was threatened."  Because when

18  you give somebody money and it turns out it's a fraud, you go

19  to the door of that person you gave the money to.  So

20  defendant's action caused people to hate each other, to

21  threaten each other.  There were threats of violence and some

22  violence was perpetrated.  You know this from the reports, Your

23  Honor.

24    And I read the letters of support that were submitted

25  to the Court, also.  And we're not oblivious of them as the

*U.S.A. v. Michael Winans, Jr.*

1    government.  We know the defendant has a family, as

2    Mr. Hatchett mentioned.  And it's a good family and he was

3    raised in a good way.

4            The problem is, when I read these letters -- I read

5    them all, and people talk about how friendly, how helpful, how

6    nice about all the good characteristics.  Unfortunately, unlike

7    in a violent criminals, criminals in white-collar crime, these

8    are the tools of their trade, to be friendly, to be

9    trustworthy, to help everybody because you want people to trust

10   you.

11           So while it may look like these are great things to

12   weigh on behalf of the defendant, they could be seen also,

13   these are tools of the trade he used to have people to invest

14   with him.  That's the problem.

15           And Your Honor read the quotes from some of the

16   victims that I included in the sentencing memorandum we

17   submitted, and you saw how calculated the scheme was, how he

18   used religion, he used the church, he used the good reputation

19   of a good family to have people to trust him.  And one sentence

20   that I bolded, and it stuck with me, one of the victims wrote,

21   because she invested, I believe, a few thousand dollars

22   compared to others who invested hundreds of thousands, she

23   said, "To some, it may not seem like a lot of money.  To me it

24   was everything I had," or something to that extent.

25               I know I don't have to tell this Court how serious

*U.S.A. v. Michael Winans, Jr.*

1    this is and I don't know what sentence can satisfy the victims

2    in this case, what sentence can make them whole, what sentence

3    can mend the injuries, the emotional and other, the impact this

4    defendant had on many, many people, maybe more than 1,000

5    people.

6              I know the Court exercises discretion wisely and I

7    know the Court will take into account everything that was

8    submitted.  And again, I renew my request that the Court

9    sentence the defendant to several years of incarceration within

10   the guidelines.

11             Thank you, Your Honor.

12             THE COURT:  All right.  Thank you very much, Mr.

13   Hammoud.

14             Mr. Winans, you have the right to speak on your own

15   behalf.  Is there anything that you wish to say to me before I

16   impose sentence?

17             DEFENDANT WINANS:  Yes, Your Honor.

18             THE COURT:  You may proceed.

19             DEFENDANT WINANS:  Good afternoon, Your Honor.

20             First, I wanted to apologize to everyone who was

21   involved in this situation.  There were some decisions that I

22   made that were negligent and that were even irresponsible in

23   nature, and as a result, it cost people financial and also

24   emotional damage.  And for that I repent.

25             My prayers that God will be able to mend and heal

*U.S.A. v. Michael Winans, Jr.*

1    their hearts.  And if there's been faith lost in man and also

2    in God, that that will also be restored.

3           There was absolutely zero percent malicious intent on

4    my part.  When this investment was presented to me, I thought

5    it was a good one.  And so I shared that with people who I

6    cared about.  And because I was so confident in it, I told them

7    that they could share with people who they cared about, because

8    I wanted people to be able to have a better life.

9           It wasn't for the sake of me trying to hurt anybody

10   or to try to take from the hard worker each day for my own

11   lavish living or anything like that.  That's not in my heart.

12   It's never been and it never will be.

13          I've been a giver all my life.  And when I found out

14   midway in this investment that the investment was over, there

15   was a substantial amount of money that was owed back to people

16   who had invested.  And so I had a choice, a choice to inform

17   them that the investment was over, that there was a likelihood

18   that they would not receive their money back or to continue on

19   in hopes of being able to find an investment that would be able

20   to take care of that outstanding debt.  Not to continue this

21   thing on, and on and on.  It was much more of a burden than it

22   was of a help for me.

23          And so I plead for mercy.  I believe that if a light

24   was to shine on all of our darkest moments, our worst sins, if

25   a light was to shine on that thing which we feel least proud

*U.S.A. v. Michael Winans, Jr.*

1    about, a light, I believe we would all plead for mercy.

2          And so I ask your forgiveness because my heart has

3    never been to take from any man on this earth or any woman.

4    And I did make mistakes, but I accepted those mistakes.  And

5    again, I ask for your mercy so that I can right this wrong much

6    sooner than later.

7          THE COURT:  All right, thank you very much.

8          DEFENDANT WINANS:  Thank you.

9          THE COURT:  Mr. Winans, you pled guilty to Count One,

10   wire fraud, with a Rule 11 on October 3rd of last year, 2012.

11         In a moment I'm going to impose a sentence sufficient

12   but not greater than necessary to comply with the purposes set

13   forth in 18 U.S.C. Section 3553(a).

14         I've considered the nature and circumstance of the

15   offense.  This is a very, very serious offense that has ruined

16   many lives.  From approximately October of 2007 through

17   September 2008, you operated the Winans Foundation Trust and

18   represented that the trust was a company investing in crude oil

19   bonds in Saudi Arabia.  In fact, these representations were

20   made in more than one church.

21         You initially recruited 11 individuals whom you

22   called shareholders in the trust to invest in the crude oil

23   bonds.  You required the shareholders to solicit additional

24   investors, to incorporate businesses to hold the funds provided

25   by the investors they solicited and to send investor funds to

1    the trust.

2            As early as December of 2007, you became aware that

3    the Saudi Arabian crude oil bond did not exist as an investment

4    vehicle, yet you did not disclose this fact to the existing

5    investors.  And with the intent to defraud, you continued to

6    solicit funds for the trust.

7            As a result, you obtained over $8 million from more

8    than a thousand victims.  You then converted some of the

9    victims' investment money to your own personal use, and also,

10   in Ponzi scheme fashion, gave some of the later victims' money

11   to the earlier victims and falsely represented to them that

12   this was a return on their quote, unquote investments.

13           Right now, I received many letters from the victims

14   and I just want to highlight and note a few of the letters,

15   what the victims have said to me.  I'm not going to name any

16   names.

17           One victim,

18           "Since this fraudulent investment scheme, we have

19           lost almost everything.  We have lost our savings,

20           our childrens' college investments also had to be

21           cashed in in order to survive.  In lieu of

22           college, my daughter had to enlist in the Army

23           against her wishes and ours because we really had

24           no choice."

25   What really jumped out at me, it has been referenced earlier in

22

*U.S.A. v. Michael Winans, Jr.*

1   the sentencing hearing, was this one letter I read.

2             "I was convinced that this was a totally safe

3             investment.  Michael Winans stood in church

4             pulpits on several occasions and spoke about the

5             crude oil investments and it was guaranteed that

6             we would not lose on this and emphasis was put on

7             the initial investment surely guaranteed.  I used

8             my money I had in savings and borrowed on my

9             charge cards to make the investments."

10  Again, I note that on at least more than one occasion you went

11  to church and from a pulpit solicited funds, perpetrated fraud

12  on these good, decent churchgoing people.  That is -- that was

13  very, very, very troubling to me.

14            Another individual writes,

15            "I'm a senior citizen and also I'm on a fixed

16            income.  I invested my money with you."

17  And she lost the money that she invested with you.

18            And I have another letter from another senior citizen

19  who invested money with you and lost all their money because of

20  the investment with you.

21            Another individual writes,

22            "We trusted Mike because we knew him and his

23            family for years.  I'm so sorry this happened.

24            I'm so sorry that I lost $5,000."

25  One family member or ex-family member, writes that her

*U.S.A. v. Michael Winans, Jr.*

```
 1    immediate family lost over $250,000.

 2              Another individual writes,

 3              "My husband and I are victims of Michael Winans'

 4              Ponzi scheme in the amount of $116,000 as of

 5              August of 2007.  We've suffered most financially,

 6              for the money that we entrusted to Mike was our

 7              entire life savings.  As I mentioned, we did end

 8              up borrowing money just to keep things afloat.  We

 9              initially had no debt and planned on being -- put

10              in a position to maintain our childrens'

11              educational expenses and other investment

12              endeavors."

13    And then she writes,

14              "I view pictures of Michael driving high-priced

15              cars or -- I viewed pictures of Michael driving

16              high-priced cars, living a lavish life and

17              socializing with celebrity-types via social

18              media."

19    Another writes,

20              "This silver-tongued con man used his family name

21              to give us a false sense of trust, that he was an

22              upstanding person, even went so far as to stand up

23              in front of a church and said, 'Would I be using

24              this forum, if I wasn't being truthful with you?'

25                   When I got the call that told me that
```

24

*U.S.A. v. Michael Winans, Jr.*

1          thousands of my dollars I invested in this clown

2          was not going to be around, I was devastated.  You

3          perpetrated fraud over 1,000 individuals using

4          your good name, your family's stellar reputation

5          amongst devout, churchgoing Christians, and again,

6          to perpetrate fraud."

7    I consider the nature of this and the circumstances of this

8    offense to be very, very serious, and very, very, very

9    troubling.

10          I've considered your history and your

11   characteristics.  You don't have any prior criminal history.

12   You had a very good childhood, unlike most of the individuals

13   that I see in the criminal cases that I've had before me.

14          You have a great relationship with your parents.  You

15   have one sibling Lashay (phonetic), who you are very close to.

16   You are in a stable marriage, apparently a strong marriage, and

17   you have one child who is one year of age.

18          You're in excellent health.  You don't have any

19   mental or emotional health issues, no substance abuse issues

20   that would explain some of your behavior, maybe.

21          You have a high school education and an associate's

22   degree in business.

23          You do have an employment record, again unlike many

24   individuals I see before me in criminal cases.  You have your

25   own musical publishing company.

*U.S.A. v. Michael Winans, Jr.*

1        But as I was reviewing the presentence report, I

2   really didn't understand where your income was coming from and

3   how much income you were actually deriving from the different

4   businesses listed at paragraphs 53 through 57 of the

5   presentence report.

6        So I have considered your history and your

7   characteristics.  I've considered the need for the sentence

8   imposed to reflect the seriousness of the offense, and again,

9   this is a very serious and troubling offense, to promote

10   respect for law and again to provide just punishment for what

11   you did.

12        Further, I've considered the need for the sentence

13   imposed to afford adequate deterrence to criminal conduct,

14   adequate deterrence to other individuals who would want to

15   perpetrate fraud on the public, to engage in Ponzi schemes.

16        I've considered the need for the sentence imposed to

17   protect the public from further crimes by you, though, quite

18   frankly, I don't view you as a future threat to engage in

19   criminal conduct.

20        I've considered the need for the sentence imposed to

21   provide you with needed educational or vocational training,

22   medical care or other correctional treatment in the most

23   effective manner.

24        I've considered the kinds of sentences available and

25   the sentencing range.  The maximum sentence in this case is 20

*U.S.A. v. Michael Winans, Jr.*

1    years.  There was a Rule 11 which I accepted, and the advisory

2    guidelines are 151 to 188, and per the Rule 11, I am capped at

3    188.  Probation is not an option.  I do note that there have

4    been no restitution payments made so far.

5            I have again considered the kinds of sentences

6    available and the sentencing range.  I've considered all

7    factors under 18 U.S.C. Section 3553(a) in imposing the

8    sentence that I'm going to impose upon you right now.

9            Again, you pled guilty to Count One, wire fraud with

10   a Rule 11 on October 3, 2012.  Pursuant to the sentencing

11   Reform Act of 1984, the Court, considering the sentencing

12   guidelines which I've stated on the record and which are, of

13   course, advisory and the factors contained in 18 U.S.C. Section

14   3553(a), hereby commits you to the custody of the United States

15   Bureau of prisons for a term of 165 months.

16           Upon release from imprisonment, you shall be placed

17   on supervised release for a term of five years.  You must pay a

18   special assessment of $100, which is due immediately.  You must

19   pay restitution in the amount of $4,700 -- excuse me,

20   $4,796,522, payable to the victims of your scheme, of your

21   fraud.

22           While in custody, you shall participate in the inmate

23   financial responsibility program.  The Court is aware of the

24   requirements of this program and approves the payment schedules

25   of this program and orders your compliance.

*U.S.A. v. Michael Winans, Jr.*

1        The Court is ordering that you pay a fine of

2   $175,000.  Mandatory drug testing is suspended.

3        While on supervision, you shall abide by the standard

4   conditions as adopted by the United States District Court for

5   the Eastern District of Michigan and shall comply with the

6   following special conditions.

7        Due to the order of restitution, the following

8   special conditions are imposed.  You shall make monthly

9   installment payments on any remaining balance of the

10  restitution at a rate and schedule recommended by the probation

11  department and approved by this Court.

12       You shall not incur any new credit card -- new credit

13  charges or open additional lines of credit without approval of

14  your probation officer.

15       You shall provide your probation officer with access

16  to any requested financial information.  All monies, income,

17  royalties, commissions earned or received shall be promptly and

18  accurately reported to the Probation Department.  You shall

19  provide the Probation Department with copies of any and all

20  contracts, as well as any and all notifications or copies of

21  amendments.

22       And if determined appropriate by your probation

23  officer, you shall participate in a program approved by the

24  Probation Department for mental health counseling.

25       And that will be the sentence of this court.  Again,

*U.S.A. v. Michael Winans, Jr.*

1   why did I give you the sentence that I just gave you?  I have

2   stated the 3553(a) factors on the record here.

3          No one knows why you did it.  Again, you grew up in a

4   good home.  You were taught the difference between right and

5   wrong.  You come from a good family with a stellar reputation

6   in the community, not only in Detroit but throughout the United

7   States.  Rather than adhering to the values that you were

8   taught, you caused a minimum of $8 million in fraud to over

9   1,000 victims.

10          Again, as we discussed and you mentioned, you may

11   have believed that this investment was for legitimate reasons

12   for the first month, but upon finding out that it was a scam,

13   you didn't stop.  You continued.  And you left hundreds of

14   people in financial ruin; families destroyed, friendships

15   destroyed, savings destroyed.

16          And from the victims' letters, you even used the

17   church, the church or churches to perpetrate this fraud.  And I

18   think it was a Ms. Hammond, was it, that spoke earlier, the

19   first victim?

20          MR. HAMMOUD:  Hurt, Your Honor, Ms. Hurt.

21          THE COURT:  Hurt, I apologize.  Ms. Hurt mentioned

22   that she couldn't believe that she got yourself into the

23   situation, but when you're speaking on behalf of yourself, with

24   your name, from a church, I can see where almost anyone could

25   fall victim to this scheme, to this fraud.  And hopefully this

1   sentence will deter others from engaging in the same type of

2   conduct in the future.  And that's the reason why I gave the

3   sentence that I gave you.

4        Okay.  Mr. Hatchett, do you happen to have the Rule

5   11 in front of you?

6        MR. HATCHETT:  Yes, I do, Your Honor.

7        THE COURT:  Could you please turn to page 13,

8   paragraph seven, entitled "Waiver of Appeal"?

9        MR. HATCHETT:  Yes.

10        THE COURT:  Mr. Winans, do you see that paragraph?

11        DEFENDANT WINANS:  Yes.

12        THE COURT:  It reads, "Defendant, being you, waives

13   any right he may have to appeal his conviction.  If the

14   sentence imposed does not exceed the maximum allowed by Part 3

15   of this agreement, the defendant, again being you, also waives

16   any right he may have to appeal his sentence.

17        If the sentence imposed is within the guideline range

18   determined by Paragraph 2(b), the government agrees not to

19   appeal the range, but retains its right to appeal any sentence

20   below that range."

21        And, Mr. Winans, did you hear what I just read to

22   you?

23        DEFENDANT WINANS:  Yes, Your Honor.

24        THE COURT:  Now, you may be entitled to appellate

25   review of your conviction and sentence.  If you wish to appeal

*U.S.A. v. Michael Winans, Jr.*

1    this conviction and sentence you must do so within 14 days.

2              Did you hear what I just said?

3              DEFENDANT WINANS:  Yes, sir.

4              THE COURT:  And if you cannot afford to hire an

5    attorney to represent you on appeal you need to file the

6    necessary indigency paperwork immediately with the Clerk of the

7    Court.

8              Did you hear what I just said?

9              DEFENDANT WINANS:  Yes, Your Honor.

10             THE COURT:  And if you wish to appeal this conviction

11   and sentence, I would suggest that you discuss that issue

12   immediately with your attorney, Mr. Hatchett.

13             Did you hear what I just said?

14             DEFENDANT WINANS:  Yes, Your Honor.

15             THE COURT:  Mr. Hammoud, any other sentencing issues?

16             MR. HAMMOUD:  No, Your Honor.

17             THE COURT:  Mr. Hatchett, any other sentencing

18   issues?

19             MR. HATCHETT:  None, Your Honor.

20             THE COURT:  Okay.  Mr. Hammoud any objection to the

21   sentence?

22             MR. HAMMOUD:  No, Your Honor.  The government doesn't

23   have any Bostic-type objections.

24             THE COURT:  Mr. Hatchett, do you have any objections

25   to the sentence?

*U.S.A. v. Michael Winans, Jr.*

```
 1              MR. HATCHETT:  No, Your Honor.

 2              THE COURT:  All right.  Thank you very much.

 3              PROBATION:  Is there an issue of voluntary surrender?

 4              THE COURT:  Mr. Hatchett?

 5              MR. HATCHETT:  Yes, Judge.  I've discussed this

 6    matter with Mr. Hammoud.  The defendant, as noted in chambers,

 7    has been extremely cooperative.  He's no flight risk and he

 8    will voluntarily surrender.

 9              I would ask that the Court recommend a designation

10    somewhere within the State of Maryland, if possible.

11              THE COURT:  Mr. Hammoud?

12              MR. HAMMOUD:  I reviewed the letter submitted by

13    pretrial services to the Court regarding defendant's compliance

14    with his bond since the day he was in front of this Court to

15    take a plea, and they recommended he voluntarily surrender

16    because he complied with all the conditions of bond.  And we

17    have no objection that he stays out on bond until the Bureau of

18    Prisons has a facility for him to surrender to.  And I

19    understand the Court has no choice of which facility he goes

20    to.

21              THE COURT:  That's correct.  So there's no objection

22    by the government, so we'll allow a voluntary surrender.  And I

23    will recommend -- I can't tell the Bureau of prisons where

24    Mr. Winans should go, but I will recommend facilities in the

25    Maryland area.
```

*U.S.A. v. Michael Winans, Jr.*

1           MR. HATCHETT:  I understand.  Thank you, Your Honor.

2           THE COURT:  Anything else, Mr. Hatchett?

3           MR. HATCHETT:  Nothing further, Your Honor.

4           THE COURT:  Mr. Hammoud?

5           MR. HAMMOUD:  Nothing further, Your Honor.  Thank

6     you.

7           THE COURT:  Okay, thanks.

8           DEPUTY COURT CLERK:  All rise.

9                (Court in recess at 2:56 p.m.)

10                         *      *      *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15                    **C E R T I F I C A T I O N**

16          I, Marie J. Metcalf, Official Court Reporter for the

17   United States District Court, Eastern District of Michigan,

18   Southern Division, appointed pursuant to the provisions of

19   Title 28, United States Code, Section 753, do hereby certify

20   that the foregoing is a correct transcript of the proceedings

21   in the above-entitled cause on the date hereinbefore set forth.

22          I do further certify that the foregoing transcript

23   has been prepared by me or under my direction.

24   s\Marie J. Metcalf                          05-02-13

25   Marie J. Metcalf, CVR, CM                   (Date)

34