UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


United States of America,

       Plaintiff/Respondent,                Civil Case No. 15-11382
                                            Crim. Case. No. 12-20598

v.

Michael Winans, Jr.,                      Sean F. Cox
                                            United States District Court Judge

       Defendant/Petitioner.

_____/


**OPINION & ORDER
DENYING PETITIONER'S 28 U.S.C. § 2255 MOTION**

On October 3, 2012, Petitioner Michael Winans Jr., ("Petitioner") pleaded guilty to one

count of wire fraud, in violation of 18 U.S.C. § 1343. On February 27, 2013, this Court

sentenced Petitioner to 165 months' imprisonment. (Doc. # 19, Sentencing Trans. at 27).

Judgment was entered on March 1, 2013. (Doc. # 13, Judgment).

This matter is now before the Court on Petitioner's Motion to Vacate Sentence pursuant

to 28 U.S.C. § 2255. (Doc. # 25, Pet.'s Br.). The Government has filed a Response to

Petitioner's motion (Doc. # 29, Gov't Resp.) and Petitioner has filed a Reply. (Doc. # 31, Pet.'s

Reply). The Government was ordered to file a supplemental brief responding to Petitioner's

Reply, which it did on January 6, 2017. (Doc. # 34, Gov't Supp'l Br.). Petitioner has asked for

leave to file a response to the Government's supplemental brief, (Doc. # 37), which the Court

shall deny.

Because the files and records of the case conclusively establish that Petitioner is not

entitled to relief as to any of the claims set forth in this § 2255 motion, an evidentiary hearing is not necessary. The motion is therefore ready for a decision by this Court. For the reasons set forth below, Petitioner's Motion to Vacate Sentence will be **DENIED**. Moreover, the Court declines to issue a certificate of appealability.

## BACKGROUND

The background facts are largely undisputed. On September 10, 2012, Petitioner was charged by Information with a single count of wire fraud. (Doc. #1, Information). On October 3, 2012, Petitioner pleaded guilty to the wire fraud charge, as set forth in the Information.

In his Rule 11 Plea Agreement, Petitioner admitted that he devised a scheme to defraud and obtain money by means of fraud and fraudulent material pretenses, representations, and promises. (Doc. #10, Rule 11 Plea Agreement at 2). Specifically, Petitioner admitted that, from approximately October 2007 through September 2008, he operated the Winans Trust Foundation (the Trust) and represented that the Trust was a company investing in crude oil bonds in Saudi Arabia. (*Id.* at 3). Petitioner recruited eleven "shareholders" to: (1) solicit investors; (2) incorporate businesses to hold the funds provided by the investors they solicited; and (3) send the investor funds to the Trust. *Id.*

Petitioner became aware that the Saudi Arabian crude oil bond did not exist as an investment vehicle as early as December 2007. *Id.* Still, Petitioner failed to disclose this fact to existing investors and, with the intent to defraud, continued to solicit funds for the Trust. *Id.* Each of the victims of this scheme invested between $1,000 and $7,000. *Id.* Petitioner obtained over $8 million from over 1,000 investors. *Id.*

Petitioner further admitted that: (1) he converted some of the investors' money to his own

2

personal use; (2) that he gave some of his later investors' money to his earlier investors; and (3) that he falsely represented to the investors that it was a return on their investments. *Id.* at 4.

The agreed-upon guideline range in the Plea Agreement was 151-188 months. (Rule 11 Plea Agreement, at 5). Attached to the Plea Agreement are several worksheets that were used by the parties to calculate Petitioner's sentencing guideline range. (Rule 11 Plea Agreement, at 17-30). On Worksheet "D" of the Plea Agreement, entitled "Guideline Range," Petitioner's Total Offense Level was 34 and the Criminal History Category was I.

The Total Offense Level appears to have been calculated as follows: (1) Petitioner received a level 7 increase for pleading guilty to wire fraud, pursuant to § 2B1.1(a)(1); (2) Petitioner received a level 20 increase because the total loss amount was more than $7,000,000 and less than $20,000,000, pursuant to § 2B1.1(b)(1)(K); (3) Petitioner received a level 6 increase because more than 250 victims were affected, pursuant to § 2B1.1(b)(2)(C); and (4) Petitioner received a level 4 increase because he was the leader of the scheme, pursuant to § 3B1.1. This produced a Base Offense Level of 37. With an Acceptance of Responsibility[1] reduction of three levels, Petitioner's Total Offense Level became 34.

The Plea Agreement contained a section entitled "Waiver of Appeal," wherein Defendant agreed to waive any right he may have to appeal his conviction. (*Id*. at 13).

Petitioner reviewed the Rule 11 Plea Agreement and the attached worksheets with his attorney before he signed it. At the plea hearing, Petitioner was placed under oath and he and the Court engaged in the following colloquy:

The Court:     I'm going to ask you some questions regarding the facts of the crime with

---

[1] U.S.S.G. § 3E1.1

|              |                                                                                                                                                                  |
|--------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | which you're charged.  You must tell the truth.  Any false answers can be used against you in a separate prosecution for perjury or false statement. Do you understand? |
| Defendant:   | Yes, your honor.                                                                                                                                                 |

. . . .

| The Court:   | Mr. Winans, have you heard the charge that has been made against you? |
|--------------|-----------------------------------------------------------------------|
| Defendant:   | Yes, Your Honor.                                                       |
| The Court:   | And have you discussed the charge, as well as sentencing consequences of this charge with your attorney, Mr. Hatchett? |
| Defendant:   | Yes, Your Honor.                                                       |
| The Court:   | And has Mr. Hatchett answered each and every question that you've had regarding the charge, as well as the sentencing consequences of the charge? |
| Defendant:   | Yes.                                                                  |
| The Court:   | Do you have any questions at all regarding the charge or the sentencing consequences of this charge? |
| Defendant:   | No, Your Honor.                                                       |

. . . .

| The Court:   | Before you signed [the Rule 11 Plea Agreement], did you read the document, as well as the attached worksheets? |
|--------------|----------------------------------------------------------------------------------------------------------------|
| Defendant:   | Yes, Your Honor.                                                                                               |
| The Court:   | And before you signed that document, did you review and discuss the document as well as the attached worksheets with Mr. Hatchett? |
| Defendant:   | Yes, Your Honor.                                                                                               |
| The Court:   | Okay. And before you signed that document, did Mr. Hatchett answer each and every question that you had regarding the Rule 11 Agreement, as well as the attached worksheets? |

| | |
|---|---|
| Defendant: | Yes, Your Honor. |
| The Court: | And do you have any questions at all regarding anything contained in the Rule 11 Agreement, as well as the attached worksheets? |
| Defendant: | No, Your Honor. |
| The Court: | And has Mr. Hatchett answered each and every question that you've had regarding your case? |
| Defendant: | Yes, Your Honor. |
| The Court: | And are you satisfied with the advice and service that Mr. Hatchett has provided to you in your case? |
| Defendant: | Yes, Your Honor. |
| . . . . | |
| The Court: | Now, is your willingness to plead guilty the result of a Rule 11 Plea Agreement that came about after discussions between the government attorney, Mr. Hammoud, your attorney, Mr. Hatchett, and yourself? |
| Defendant: | Yes, Your Honor. |
| . . . . | |
| The Court: | And could you please turn to page two, paragraph c(1), under "factual basis for guilty plea"? Do you see that paragraph? |
| Defendant: | Yes. |

(Doc. # 18, Plea Hearing Transcript at 4, 8-10, 12). The Court proceeded to read aloud the factual basis underlying Petitioner's plea. (*Id*. at 12-15). Petitioner confirmed that the facts read to him were true and accurate. (*Id*. at 15).

Petitioner was also aware that his stipulated guideline range called for 151 to 188 months in prison, as evidenced by the following discussion that also took place at the plea hearing:

| | |
|---|---|
| The Court: | Now we're on page five. Could you drop down to paragraph 2(b) on page five, which is entitled "Agreed Guideline Range"? Do you see that? |

| | |
|---|---|
| Defendant: | Yes. |
| The Court: | Do you see in the second sentence where it reads your guideline range is 151-188 months in prison? Do you see that? |
| Defendant: | Yes. |
| The Court: | Now, of course the guidelines are advisory. However, has Mr. Hatchett explained to you the significance of guidelines in sentencing? |
| Defendant: | Yes, your Honor. |

(*Id.* at 16).

This Court held a sentencing hearing on February 27, 2013. At the sentencing hearing, the Court asked Petitioner's trial counsel whether he had the opportunity to review the presentence report with Petitioner. Mr. Hatchett replied as follows:

| | |
|---|---|
| Mr. Hatchett: | I have, your Honor. The record should reflect that I have spent a great deal of time with Mr. Winans. We have gone thoroughly through the report and we have sent to the probation department any objections that we had to the report, which objections at this point we're going to withdraw. |
| The Court: | And it's my understanding, and please correct me if I'm wrong, the objection involved the issue of restitution. And currently, restitution has been correctly noted at $4,796,522; is that correct? |
| Mr. Hatchett: | That is correct. |

(Doc. # 19, Sentencing Hearing Trans. at 4-5).

The Court and Petitioner engaged in the following colloquy before this Court sentenced Petitioner to a total term of imprisonment of 165 months:

| | |
|---|---|
| The Court: | Mr. Winans, have you had the opportunity to review the presentence report with Mr. Hatchett? |
| Defendant: | Yes, Your Honor. |
| The Court: | And do you have any objections, additions, corrections or deletions that |

you wish to bring to my attention?

Defendant:    No, Your Honor.

(*Id*. at 7).

Before imposing its sentence, the Court emphasized that "[t]his is a very, very serious offense that has ruined many lives." (*Id*. at 21). The Court also advised that it considered the following 18 U.S.C. § 3553(a) factors: (1) the nature and circumstance of the offense, (2) Petitioner's history and characteristics, (3) the need for the sentence imposed to reflect the seriousness of the offense in order to promote respect for the law; (4) the need for the sentence to afford adequate deterrence to criminal conduct, (5) the need for the sentence imposed to protect the public from further crimes perpetrated by Petitioner; (6) the need for the sentence imposed to provide Petitioner with needed educational or vocational training, medical care or other treatment; and (7) the kinds of sentences available and the sentencing range. The Court concluded:

> The Court:    Again, you pled guilty to Count One, wire fraud with a Rule 11 on October 3, 2012. Pursuant to the sentencing Reform Act of 1984, the Court, considering the sentencing guidelines which I've stated on the record and which are, of course, advisory and the factors contained in 18 U.S.C. Section 3553(a), hereby commits you to the custody of the United States Bureau of prisons for a term of 165 months.
>
> . . . .
>
> The Court:    And that will be the sentence of this court. Again, why did I give you the sentence that I just gave you? I have stated the 3553(a) factors on the record here. No one knows why you did it. Again, you grew up in a good home. You were taught the difference between right and wrong. You come from a good family with a stellar reputation in the community, not only in Detroit but throughout the United States. Rather than adhering to the values you were taught, you caused a minimum of $8 million in fraud to over 1,000 victims . . . . And from the victims' letters, you even used the church, the church or churches to perpetrate this fraud . . . . hopefully

> this sentence will deter others from engaging in the same type of conduct
> in the future.  And that's the reason why I gave the sentence I gave you.

(*Id*. at 27, 28-30).  Petitioner was further ordered to pay restitution in the amount of $4,796,522.

(*Id*. at 27).

This Court issued a judgment on March 1, 2013.  (Doc. # 13).  Petitioner filed an appeal on March 12, 2013, arguing, *inter alia*, that the restitution order exceeded this Court's statutory authority.  On March 17, 2014, the Sixth Circuit issued an Opinion & Order, wherein it dismissed Petitioner's appeal because the "waiver in [Petitioner's] plea agreement waived any right to appeal the district court's restitution order."  (Doc. # 21, Sixth Cir. O&O at 1).  The Sixth Circuit issued its Mandate on April 8, 2014.  (Doc. # 23).

Petitioner filed the instant Motion to Vacate Sentence, pursuant to 28 U.S.C. § 2255, on March 13, 2015.  (Doc. # 25, Pet.'s Br.).  The Government filed a response in opposition on June 11, 2015.  (Doc. # 29, Gov't Resp.).  Petitioner filed a reply on August 31, 2015.  (Doc. # 31, Pet.'s Reply).  Petitioner's reply contained exhibits and arguments not included in his original motion.  As such, the Government was ordered to file a supplemental brief (Doc. # 32), which the Government did on January 6, 2017.  (Doc. # 34, Gov't Suppl. Br.).

On February 15, 2017, Petitioner filed a motion for leave to file a response to the Government's supplemental brief.  (Doc. # 36).  Petitioner also filed the proposed response. (Doc. # 37).  The Government opposes Petitioner's request for leave to respond to the supplemental brief.  (Doc. # 38).  The Court does not find a response to the Government's supplemental brief necessary.  The Court only ordered supplemental briefing from the Government because Petitioner had attached exhibits and made certain arguments for the first time in his reply.

**LEGAL STANDARD**

Petitioner's motion is brought pursuant to 28 U.S.C. § 2255, which provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

The Court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) ("evidentiary hearings are not required when . . . the record conclusively shows that the petitioner is entitled to no relief."). However, an evidentiary hearing is not required if the petitioner's allegations "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8 th Cir. 1995)). Because the record is clear that Petitioner is not entitled to relief, the Court finds that an evidentiary

hearing is not necessary.

## ANALYSIS

I.  **Ineffective Assistance of Counsel**

Petitioner asserts a number of ineffective assistance of counsel claims against his trial attorney, William Hatchett.  Petitioner argues that he was denied effective assistance of counsel at the time of his plea and at the time of his sentencing, in violation of his rights under the Sixth Amendment.  Petitioner's claims largely pertain to the effect certain factual stipulations had on his sentence (*i.e.,* the effect the $8 million loss and over 250 victims had on Petitioner's guideline range).

The Sixth Amendment requires effective assistance of counsel at all critical stages of a criminal proceeding.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).  Ineffective assistance of counsel claims are governed by the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.

In order to demonstrate ineffective assistance of counsel, a petitioner must show both that defense counsel's performance was deficient, and that petitioner suffered prejudice as a result.  *Id.* at 687.  Indeed, it is permissible for a court to determine that prejudice cannot be established, and thus dispose of the claim without deciding whether counsel performed deficiently.  *Id.* at 697 ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

A.  **Mr. Hatchett's Previous Suspension**

Petitioner argues that he was denied effective assistance of counsel because Mr. Hatchett was suspended from practicing law in 2008, when Petitioner first sought his counsel in connection with this scheme. Petitioner's argument is meritless.

Regardless of whether Petitioner was aware that Mr. Hatchett's licence was suspended in 2008, this fact has no bearing on Mr. Hatchett's representation of Petitioner in the instant action. It is without question that Mr. Hatchett was licensed to practice law when he represented Petitioner in this action. Thus, this claim fails.

**B.** **Petitioner's Plea Agreement**

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

"The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010), *citing Hill v. Lockhart*, 474 U.S. 52, 57 (1985). It is well accepted that "the decision to plead guilty first, last, and always rests with the defendant, not his lawyer." *Smith v. U.S.*, 348 F.3d 545, 552 (6th Cir. 2003). However, an attorney is obligated to fully inform his or her client of all available options. *Smith*, 348 F.3d at 552-53. "A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.*

The failure of defense counsel to "provide professional guidance to a defendant regarding

his sentence exposure prior to a plea may constitute deficient assistance." *Smith*, 348 F.3d at 553 (quoting *Moss v. United States,* 323 F.3d 445, 474 (6th Cir. 2003)). In order to demonstrate prejudice, "the petitioner must show 'a reasonable probability' that 'counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *Briggs v. U.S.,* 187 Fed. App'x 540, 543 (6th Cir. 2006) (quoting *Smith*, 348 F.3d at 551).

Here, Petitioner appears to be arguing that his plea was neither knowing nor voluntary because Mr. Hatchett failed to investigate the case or research and review the applicable sentencing guidelines[2] prior to Petitioner accepting the terms of the Government's proposed Plea Agreement. Hatchett's failures allegedly resulted in the following: (1) the Plea Agreement failed to give Petitioner the required credit for repayment to investors; (2) Hatchett urged Petitioner to accept a plea he knew to be inaccurate and he misrepresented the effect of the sentencing guidelines to Petitioner; and (3) Hatchett displayed a conflict of interest in his representation of Petitioner. Each of these arguments are without merit for the reasons discussed below.

### 1. Amount of Loss[3]

Petitioner first argues that he was denied effective assistance of trial counsel because he was persuaded to accept a Rule 11 Plea Agreement that did not credit Petitioner for the amounts repaid to investors before detection. In his affidavit, Petitioner specifically states that:

---

[2] To the extent that Petitioner relies upon the affidavit of Margaret Sind Raben for the proposition that Mr. Hatchett failed to prepare or investigate, the affidavit contains statements that are conclusory and are therefore insufficient for purposes of supporting Petitioner's claims for ineffective assistance.

[3] To the extent that Petitioner relies on copies of cancelled checks and bank statements as evidence of his alleged repayment to investors, these exhibits fail to save Petitioner's § 2255 claims for the reasons below.

When I saw the [Plea Agreement] said there was an $ 8 Million fraud involving over 250 victims, I told [Hatchett] this was wrong, and I could not accept the agreement. I told him I wanted to go to trial. He told me that I could not go to trial; that if I went to trial I would be convicted of multiple counts and come out much worse than if I plead guilty. He told me this was the best deal I could get – that the government did not want me to have any credit for the money I repaid investors. Reluctantly, I signed the plea agreement and proceeded to plead guilty.

(Ex. 1 to Pet.'s Br., Pet.'s Aff. at 7).

Petitioner claims that the over $8 million loss referred to in the Plea Agreement should have been reduced by the $6.5 million allegedly repaid to investors before detection of the offense. Petitioner therefore asserts that the accurate amount of loss in this case is actually under $2.5 million – not $8 million. Petitioner also asserts that the number of victims affected by the offense was less than the 250 represented in his Plea Agreement. If the Plea Agreement accurately represented these figures, Petitioner argues that his guideline range would have been lower.[4]

Petitioner fails to establish deficient performance or resulting prejudice. The main problem with Petitioner's argument is that it presumes facts not in the record and disregards facts that are in the record. First, in arguing that the accurate amount of loss is under $2.5 million, Petitioner incorrectly assumes that the $8 million figure in the Plea Agreement was the starting point for determining the loss in this case. However, this is not true. Investigations into

---

[4] To provide clarity, Petitioner argues that, under the guidelines, the total loss amount should have been reduced by the amount repaid to investors prior to the detection of the offense. According to Petitioner, under U.S.S.G. § 2B1.1(b)(1), the loss amount of over $8 million should have been reduced to under $2.5 million because Petitioner allegedly repaid $6.5 million to investors prior to the detection of the offense. The under $2.5 million loss amount would have resulted in a 16-level increase under § 2B1.1(b)(1)(I) instead of the 20-level increase Petitioner received under § 2B1.1(b)(1)(K) for a loss amount of over $8 million. Petitioner also argues that there were less than 250 victims. This would have resulted in a 4-level increase instead of the 6-level increase he received for over 250 victims.

Petitioner's fraudulent activities had been ongoing for years. The Government has pointed to evidence suggesting that the total amount of loss in this case was anywhere between $11.5 million to $22 million. As such, the loss amount stipulated to in the Plea Agreement (over $8 million) represents a compromise on the part of the Government. Accordingly, even if Petitioner is entitled to credit for repayment, he has not established the actual amount of loss in this case. Put another way, Petitioner has not established the starting point for determining loss. All Petitioner has done is point to an amount that both parties were willing to agree to for purposes of his Plea Agreement.

Second, Petitioner overlooks the obvious fact that there are two parties involved in the negotiation of plea agreements. To the extent that Petitioner assumes that the Government would have agreed to a plea agreement that stipulated to a loss amount below $8 million and victims under 250, he is mistaken. Mr. Hatchett could not have unilaterally crafted a plea agreement containing a loss amount of under $2.5 million and victims under 250 because the other party essential to this agreement, *i.e.*, the Government, is adamant that it would not have consented to such a stipulation. Even Petitioner states in his affidavit that Mr. Hatchett advised him that the Plea Agreement was the best deal the Government was willing to offer and that the Government was not willing to deviate from the stipulations set forth therein.

Petitioner appears to overestimate Mr. Hatchett's ability to extract from the Government a plea agreement which it did not intend to offer. "[A] defendant has no right to be offered a plea," *Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012) (internal citations omitted), and "[g]enerally, decisions whether to initiate plea bargaining with prosecutors are precisely the kind of strategic decisions which are best left to the sound discretion and professional judgment of

defense counsel, and are beyond the Court's purview." *Talley v. United States*, 2006 WL 3422997, at *13 (E.D. Tenn. Nov. 27, 2006).

Third, Petitioner disregards the fact that this Court reiterated–at the plea hearing and again at sentencing–that the guidelines stipulated to in the Plea Agreement were advisory. Petitioner's argument that he would have received a lower guideline range if the loss amount was lower has little bearing on whether Petitioner would have received a lower overall sentence. This is especially true where, as here, the Court placed a number of other reasons on the record for the sentence it imposed.

In light of the foregoing, it was objectively reasonable for Mr. Hatchett to urge Petitioner to accept the Plea Agreement despite the loss amount not having been fully investigated because: (1) Petitioner was not contesting guilt; (2) Petitioner gained certainty as to his guideline range; (3) Petitioner avoided the possibility of a higher loss amount had the Government continued its investigation; (4) Petitioner avoided additional enhancements; and (5) Petitioner avoided having hundreds of witnesses testify as to how Petitioner's actions destroyed their lives. Petitioner also benefitted from a three-point downward departure for acceptance of responsibility, and from the possibility of a downward departure under U.S.S.G. § 5K1.1.

Moreover, Petitioner's argument–that the $8 million loss and 250 victims are inaccurate–disregards Petitioner's sworn testimony to the contrary. This Court engaged in an extensive colloquy with Petitioner prior to accepting his guilty plea. The Court read aloud the factual basis of Petitioner's Plea Agreement–specifically noting a loss amount of *over* $8 million and over 1,000 victims–and asked Petitioner to confirm that everything was true and accurate. Rather than object, Petitioner agreed to the facts.

To the extent that Petitioner now states that he advised Mr. Hatchett that he did not want to plead guilty to the facts stipulated in the Plea Agreement, this is belied by Petitioner's testimony at the plea hearing. At no point in time did Petitioner apprise the Court of his objection to the loss amount or the number of victims.

Nor did Petitioner indicate that he was coerced into accepting the Plea Agreement by his trial attorney. To the contrary, Petitioner stated that he was satisfied with the advice of his attorney. Petitioner cannot now collaterally attack the Plea Agreement by contradicting or calling into question his prior testimony. *See United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) (rejecting argument that defendant's attorney and family pressured him into accepting plea offer where "the judge made a careful and searching inquiry to make sure the plea was entered voluntarily" at the plea hearing).

And finally, even if Petitioner established that he was denied effective assistance of counsel, Petitioner fails to establish the prejudice prong of the *Strickland* analysis. Petitioner's argument is essentially that Mr. Hatchett secured Petitioner a bad plea deal, and that he should have secured him a better one. (*See* Pet.'s Reply at 7) ("Hatchett did not err in securing a plea deal for Winans, he erred in securing a *bad plea deal* for Winans – a plea deal that greatly overstated the amount of loss attributable to Winans") (emphasis in original). However, to establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Here, Petitioner's affidavit does not state that he would have insisted on going to trial but for Mr. Hatchett's alleged failures. In fact, Petitioner's own affidavit establishes that Petitioner

knew ahead of time that the loss amount stipulated to in the Plea Agreement was $8 million and that the Government was not willing to deviate from this amount. Petitioner even admits that he discussed this very issue with Mr. Hatchett prior to signing the Plea Agreement.

Thus, prior to pleading guilty, Petitioner understood that he was stipulating to a loss amount that did not credit Petitioner for repayment to investors. Despite knowing this, Petitioner still chose to plead guilty. In light of these facts, the Court cannot conclude that a reasonable probability exists that Petitioner would have gone to trial had Mr. Hatchett "investigated" the sentencing guidelines.

### 2. Hatchett's Alleged Failure To Discuss Plea Agreement and Effect of Plea Agreement on Likely Sentence

Next, Petitioner argues that he was denied effective assistance of counsel because "Hatchett failed to discuss the plea agreement completely with [Petitioner], and the effect of the plea agreement on the likely sentence." (Pet.'s Br. at 45). In his affidavit, Petitioner states that:

> Hatchett never explained to me the effect of my agreeing to the $8 Million fraud scheme and more than 250 victims. He never told me how those figures set my Guidelines range, and that the Guidelines range would be where the judge would begin his sentencing consideration. Hatchett actually told me the opposite; he told me after the plea that I did not have to worry about the Guidelines range, since it was not mandatory for the judge to follow the Guidelines, and since I had no record I could expect the judge to go easy on me. He told me I might get probation.

(Pet.'s Aff. at 7).

Petitioner's argument is flatly belied by his on-the-record assertions, made under oath, at the plea hearing. Petitioner was given several opportunities to ask questions about the terms of the Plea Agreement, but he asserted that he understood everything in it. Petitioner specifically testified that he: (1) read the Plea Agreement and the attached worksheets; (2) that he reviewed

and discussed the Plea Agreement and attached worksheets with his trial attorney; (3) that his trial attorney answered each question regarding the Plea Agreement and attached worksheets; and (4) that his trial attorney explained the significance of the Guidelines to Petitioner. A trial court's proper plea colloquy cures any misunderstanding that a defendant may have had about the consequences of his plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

Moreover, the worksheets attached to the Plea Agreement explicitly explained how the amount of loss and the number of victims were used to enhance the guideline range. The worksheets also indicated that probation was not authorized by the agreed-upon guidelines. By signing the Plea Agreement and by reviewing the worksheets, Petitioner indicated that he was aware of the very facts that he now claims ignorance. Petitioner cannot now take back his sworn assertions that he understood the consequences of his plea, that he was satisfied with his trial attorney's assistance, and that he understood the significance of the guideline range.

### 3. Hatchett's Alleged Conflict of Interest

In Petitioner's final argument to set aside his plea, Petitioner argues that his trial attorney was operating under a conflict of interest. Specifically, Petitioner asserts that Mr. Hatchett was "throwing [Petitioner] under the bus to protect other members of the Winans family." (Pet.'s Br. at 47-46). Petitioner fails to support this claim with any substantive law or analysis. Instead, Petitioner merely points to three separate instances in which Mr. Hatchett allegedly stated to the public and to the Court that no other family member was involved in the scheme. Arguments asserted to in a perfunctory manner are deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

### C.    Petitioner's Sentencing[5]

Petitioner also argues that he received ineffective assistance of counsel at his sentencing. Specifically, Petitioner alleges that: (1) Hatchett failed to contest erroneous victim information submitted by the Government at sentencing; (2) Hatchett failed to advise the Court of Petitioner's substantial repayment to investors; (3) Hatchett failed to present mitigating circumstances and the history and characteristics of the offender to the Court at sentencing; and (4) Hatchett failed to contest erroneous restitution calculations. Each of these arguments are without merit for the reasons discussed below.

### 1.    Failure to Contest Erroneous Victim Information & Failure to Advise the Court of Petitioner's Repayment to Investors

Petitioner's first two arguments are related. Petitioner argues that he was denied effective assistance of counsel at sentencing because: (1) Mr. Hatchett failed to contest the number of victims proposed by the Government; and (2) because Mr. Hatchett failed to advise the Court that Petitioner had repaid investors and that Petitioner had the means to continue to repay investors. (Pet.'s Br. at 49-51). Petitioner claims that the "correct Sentencing Guidelines range based on the loss he was responsible for and correct number of victims under the Guidelines was half the range calculated in the plea agreement." (Pet.'s Br. at 51). Petitioner's

---

[5] Petitioner filed a motion seeking leave to file a response to the Government's supplemental brief. In it, Petitioner asserted various arguments, including that the Supreme Court's recent decision in *Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) supports Petitioner's argument that a sentence based on an incorrect guideline is an error of constitutional magnitude requiring re-sentencing.

Although the Court shall not grant Petitioner leave to respond to the Government's supplemental brief, it is still worth noting that Petitioner's reliance on *Molina-Martinez* is misplaced because that case involved the *appeal* of a sentence based on an incorrect guideline range – it did **not** involve a motion brought under 28 U.S.C. § 2255.

ineffective assistance of counsel claim fails because he cannot establish a constitutional violation or prejudice.

The Court agrees with the Government that *Deutsch v. United States*, 2016 WL 739031 (S.D. Ill. Feb. 25, 2016) is instructive as to this issue. In *Deutsch*, the defendant pled guilty to one count of wire fraud. *Deutsch*, 2016 WL 739031, at *1. The Plea Agreement in *Deutsch* stipulated to a loss amount of between $400,000 and $1 million. *Id.* At sentencing, the *Deutsch* court used $435,517.05 as the loss amount for guideline purposes. *Id.* The defendant subsequently filed a § 2255 motion, accompanied by financial records and calculations, arguing that he was denied effective assistance of counsel because his trial attorney did not object to the loss amount, nor argue that the defendant had repaid some of the victim's losses. *Id.* at *5-6.

The *Deutsch* court ultimately held that the defendant had waived his right to file a § 2255 motion. Despite this, however, the court proceeded to address the merits of the defendant's ineffective assistance of counsel claims. *Id.* at *4. Specifically, the defendant in *Deutsch* claimed that his trial attorney was constitutionally ineffective for failing to argue or present evidence at sentencing showing that the defendant had made repayments before the detection of the fraud. *Id.* at *6. The court in *Deutsch* rejected this argument.

First, the court emphasized that at his plea hearing, the defendant stated under oath that he had read and reviewed the plea agreement, which had stipulated to the fact that the loss amount was between $400,000 and $1 million. *Id.* at *5. The court then concluded that the defendant could not establish ineffective assistance of counsel, in violation of the Sixth Amendment because:

> It was within the realm of reasonably competent performance for counsel to refrain from contesting the loss amount at sentencing or from arguing that [the

defendant] did not actually intend any fraud. In light of [the defendant's] statements in the plea agreement and the stipulation of facts and his sworn testimony at the plea colloquy, there was a serious risk that denying his fraudulent intent or challenging the loss amount at sentencing would have resulted in a higher sentence...

. . . .

In light of the plea agreement, any attempt to argue that Deutsch did not intend any fraud or that the loss in Count 1 was less than $400,000 would have opened the door to a strong argument that [the defendant] was not abiding by the plea agreement and would likely have relieved the Government of its promises in the plea agreement.

. . . .

All things considered, it was reasonable for counsel to proceed in a manner consistent with the plea agreement which, even if not accurate as to the loss amount for the count of conviction, benefitted [the defendant] overall by allowing him to avoid potential responsibility for a higher loss.

*Id.* at *6.

Similar to the defendant in *Deutsch*, Petitioner here signed a Plea Agreement which stipulated that were no guideline disputes, that the loss amount was over $8 million and that there were over 250 victims affected by Petitioner's fraud. Petitioner also affirmed under oath that he had reviewed the Plea Agreement, that he had understood the effect of the sentencing guidelines, and that the factual stipulations were true and accurate. At no point in time did Petitioner object to the loss amount or number of victims despite having multiple opportunities to do so.

In light of Petitioner's sworn testimony at the plea hearing, Mr. Hatchett's failure to contest the loss amount and number of victims at sentencing benefitted Petitioner for largely the same reasons the defendant in *Deutsch* was benefitted. Namely, Petitioner could have faced a higher sentence because he would not have been abiding by the terms of the Plea Agreement.

The Government could have continued to investigate the loss and could have pursued a higher loss amount. Moreover, Petitioner would not have benefitted from the three-point downward departure for acceptance of responsibility and Petitioner would not have been able to secure the possibility of a § 5K1.1 motion. As such, Petitioner has not established that Mr. Hatchett's assistance was deficient.

Even if Petitioner could establish that Mr. Hatchett's assistance fell below an objective level of reasonableness, Petitioner cannot establish that he was prejudiced. Petitioner must establish a reasonable probability that, but for Mr. Hatchett's alleged errors, the result of the proceedings would have been different.

Here, the Court advised Petitioner, on more than one occasion, that the guidelines were advisory. The Court also offered additional reasons for the sentence that it imposed: (1) the Court read excerpts from victim impact statements, noting how Petitioner's fraud devastated families and marriages; (2) the Court found very troubling the fact that Petitioner solicited funds for his fraudulent investment while standing at church pulpits; (3) the Court noted that Petitioner–unlike many of the criminal defendants that appear before it–had a very good childhood and an employment record; (4) the Court noted that Petitioner had been raised by a reputable family that taught Petitioner the difference between right and wrong; (5) the Court noted that the sentence it imposed reflected Petitioner's "very serious and troubling offense;" and (6) the Court stated that its sentence would deter others from perpetrating the same type of fraud in the future. In light of the Court's additional reasons, stated on the record, Petitioner cannot establish that he was prejudiced.

### 2. Failure to Present Mitigating Circumstances and History and Characteristics of Petitioner

Next, Petitioner argues that he was denied effective assistance of counsel because "there was much that Hatchett could have presented on behalf of his client that was mitigating circumstances for the court to consider..." (Pet.'s Br. at 51). In making this argument, Petitioner advances arguments that he believes Mr. Hatchett should have made at sentencing.[6]

Petitioner cannot show that Mr. Hatchett's representation at sentencing was constitutionally deficient for failure to present mitigating circumstances. First, the fact that Petitioner's current counsel would have argued things differently is insufficient to establish deficient assistance. Second, the record establishes that Mr. Hatchett did not fail to present mitigating circumstances. The record makes clear that Mr. Hatchett submitted a sentencing memorandum on behalf of Petitioner, letters in support of Petitioner, and pleaded with the Court for mercy. The Government is correct when it points out that "over-arguing" on behalf of Petitioner may not have been sound strategy in light of the overwhelming evidence against Petitioner and the gravity of Petitioner's offense.

Petitioner also fails to establish that he was prejudiced as a result of Mr. Hatchett's alleged failures at sentencing. Much of these "mitigating circumstances" were known to the Court at the time of sentencing. For example, the Court was keenly aware of Petitioner's circumstances and was perplexed by the fact that Petitioner would perpetrate such a troubling offense given his history and characteristics (*i.e.*, Petitioner's employment record, education, and

---

[6] For example, Petitioner argues that Mr. Hatchett should have: (1) advised the Court that Petitioner was defrauded by Tim Hunt; (2) advised the Court of Petitioner's "exemplary history and character;" (3) advised the Court that Petitioner was able to repay the victims; (4) advised the Court of Petitioner's dedication to his community; and (5) advised the Court of Petitioner's dedication to his family. Petitioner also argues that his activities since he's been incarcerated warrant a lighter sentence.

strong familial relationship). The Court noted that Petitioner was unlike many of the defendants that appear before it, in that he was taught the difference between right and wrong. The Court was also aware of Tim Hunt's involvement in this scheme, but it noted that Petitioner continued to solicit funds from investors after December 2007. Petitioner has therefore failed to establish that the arguments advanced in the instant motion–if advanced by Mr. Hatchett–would have resulted in a different sentence.

### 3. Failure to Contest Erroneous Restitution Calculations

Petitioner also argues that Mr. Hatchett was ineffective for failing to request "that the court remove the names of the individuals who were seeking restitution, but who had never invested with [Petitioner], or who had received more money back than they had invested..." (Pet.'s Br. at 59). Petitioner claims the accurate amount of restitution in this case is $1,471,325." (*Id.*).

First, the Court notes that Mr. Hatchett had originally filed objections to the restitution amount, but that these objections were withdrawn at sentencing. Mr. Hatchett stated, on the record, that he had spent a great deal of time discussing this issue with Petitioner and that they had thoroughly reviewed the presentence report before deciding to withdraw the objections. Petitioner also affirmed, under oath, that he had no objections to the presentence report. Again, Petitioner may not now collaterally attack his previous testimony.

Second, this is not a claim upon which federal habeas relief can be granted. To the extent that Petitioner is not claiming a right to be released, but rather challenges the imposition of a fine or other cost, he may not bring a petition of writ of habeas corpus. *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995) (interpreting the "in custody" requirement of 28 U.S.C. § 2255).

"Nor does it matter that Petitioner couched [his] restitution claim in terms of ineffective assistance of counsel....[E]ven when errors in restitution are raised as the basis of an ineffective assistance claim, habeas corpus relief is not available to challenge a restitution order imposed as part of a criminal sentence." *Thomas v. Warren*, 2012 WL 6115047, at *5 (E.D. Mich. Dec. 10, 2012) (internal quotation marks and citations omitted). As such, this claim fails.

## II. Violations of *Brady* and *Kastigar*

### A. *Brady* Violations

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Thus, in order to establish a *Brady* claim, the petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). The petitioner bears the burden of establishing each of these three elements. *Id.*

Here, Petitioner argues that the Government violated his rights under the Fifth Amendment by failing to disclose exculpatory information to the Court at sentencing. Specifically, Petitioner claims that the Government "chose not to disclose [Petitioner's] repayment to investors, and left the court with the impression that there had been an $8 million

25

fraud with no restitution." (Pet.'s Br. at 61). Petitioner's argument is without merit.

Most fatal to Petitioner's argument is the fact Petitioner was admittedly aware of the "exculpatory information" that he now claims was withheld from him by the Government. There can be no *Brady* violation where, as here, the defendant "knew or should have known the essential facts permitting him to take advantage of any exculpatory information ... or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (internal citations omitted). As such, this claim fails.

### B.    *Kastigar* Violations

In *Kastigar v. United States*, 406 U.S. 441 (1972), the Supreme Court held that when a witness who has given incriminating testimony under a grant of immunity pursuant to 18 U.S.C. § 6002 is subsequently prosecuted for a matter related to the compelled testimony, the government bears "the heavy burden of proving that all of the evidence it proposes to use [against the defendant] was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461.

Here, Petitioner argues that the Government violated its *Kastigar* agreement[7] with Petitioner when it "drafted a Rule 11 Plea Agreement that set the 'loss' figure at $8 million – the amount of money that [Petitioner] disclosed in his debriefing pursuant to the *Kastigar* letter that he had received from investors." (Pet.'s Br. at 61). Petitioner argues that the Government would not have been able to determine the amount of loss in this case without Petitioner's cooperation. (*Id*. at 62).

---

[7] Petitioner has not provided a copy of the *Kastigar* agreement that forms the basis of his claim. However, the Government does not appear to dispute the existence of this agreement.

The Court agrees with the Government that Petitioner's argument is speculative and that it disregards the fact that Petitioner stipulated, under oath, to certain facts in order to negotiate a Plea Agreement. Petitioner fails to explain how his rights have been violated in light of the fact that, here, Petitioner was not compelled to incriminate himself and instead he voluntarily chose to testify as to the factual circumstances relevant to his sentencing. (*See e.g., Wingo v. United States*, 341 Fed. App'x 132, 138 (6th Cir. 2009) (noting that *Kastigar* debriefings are crucial to plea negotiations because, "[b]ased on these debriefings, the government would determine the terms of the plea agreement and whether the government would be willing to enter into a plea agreement at all").

Moreover, Petitioner's argument is based solely on the assumption that the Government would not have been able to determine the amount of loss in this case had it not been for Petitioner's admission. However, in making this argument, Petitioner disregards other evidence at the Government's disposal prior to its debriefing with Petitioner, including the findings from the State of Michigan investigation and the information obtained from Latonya Garth, one of Petitioner's shareholders, during her interview.

## III.   Accuracy of Information Underlying Petitioner's Sentence

Petitioner argues that this Court's sentence violates his due process rights. In so doing, Petitioner relies on *Townsend v. Burke*, 334 U.S. 736, 741 (1948), for the proposition that a sentence based upon inaccurate information violates the due process clause of the Fifth Amendment. Petitioner argues that as a result of Mr. Hatchett's failure "to bring to the court a true picture of [Petitioner's] culpability, particularly the amount of loss he was responsible for in this fraud case, and also the failure to present mitigating circumstances, [Petitioner] was

sentenced on inaccurate information." (Pet.'s Br. at 60).

Petitioner's conclusory argument–which is roughly half of a page long–is not accompanied by any substantive analysis. Moreover, the record reflects that Petitioner, given every opportunity to voice his objections or concerns over the amount of loss and the adequacy of Mr. Hatchett's representation, affirmed a loss amount of over $8 million and expressed satisfaction with Mr. Hatchett's advice. The record also establishes that Petitioner expressly acknowledged, under oath, that he had reviewed the presentence report and had no objections or corrections. There was no basis for the Court to find any issue with the factual basis of Petitioner's plea and sentence. Petitioner has therefore failed to establish a constitutional violation.

## IV.    Certificate of Appealability

A certificate of appealability must issue before a petitioner may appeal the district court's denial of his § 2255 Motion. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). 28 U.S.C. 2253 provides that a certificate of appealability may issue only if a petitioner makes a substantial showing of a denial of a constitutional right. 28 U.S.C. 2253(c)(2).

"Where a district court has rejected the constitutional claim on the merits, the showing required to satisfy 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. As such, the Court declines to issue a certificate of appealability.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that Petitioner's 28 U.S.C. § 2255

motion (Doc. # 25) is **DENIED**. **IT IS FURTHER ORDERED** that Petitioner's motion for

leave to file a response to the Government's supplemental brief (Doc. # 36) is **DENIED**.

Additionally, this Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 13, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
April 13, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager