UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

MICHAEL WINANS, JR.,

                Defendant.

_____/

Case No. 12-cr-20598

HON. SEAN F. COX

### GOVERNMENT'S RESPONSE OPPOSING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America opposes defendant Michael Winans Jr.'s motion for compassionate release (ECF No. 46), because he has failed to exhaust his administrative remedies and has not established an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A).

The grounds for this response are set forth in the attached brief.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

_/s/Brandon C. Helms_
Brandon C. Helms
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313)226.9639
Email: Brandon.Helms@usdoj.gov

Dated: June 1, 2021

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

MICHAEL WINANS, JR.,

                    Defendant.

_____/

Case No. 12-cr-20598

HON. SEAN F. COX

**BRIEF IN SUPPORT OF GOVERNMENT'S RESPONSE OPPOSING
<u>DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE</u>**

**<u>Issue Presented</u>**

Whether the Court should deny Winan's motion for compassionate release (ECF No. 46), because he failed to exhaust his administrative remedies and is otherwise not eligible under 18 U.S.C. § 3582(c)(1)(A).

# CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

I.      BACKGROUND.................................................................................1

  A.   Criminal Conduct ...........................................................................1

  B.   Request for Compassionate Release ................................................2

  C.   BOP's Response to the COVID-19 Pandemic................................3

  D.   Vaccinations....................................................................................5

II.    ARGUMENT ...................................................................................7

  A.   Binding authority prohibits the Court from granting release, because Winans has not satisfied the statutory exhaustion requirement...................7

  B.   Governing Law................................................................................8

  C.   COVID-19 and Compassionate Release ......................................13

    1.  No "extraordinary and compelling reason" because Winans refused the vaccine..................................................................................14

    2.  Even ignoring Winans's refusal of the vaccine, his only risk factor— being mildly overweight—does not warrant compassionate release..........20

    3.  The § 3553(a) factors also counsel against compassionate release ...........21

III.   CONCLUSION ..............................................................................24

# TABLE OF AUTHORITIES

## Cases

*Dillon v. United States*,
   560 U.S. 817 (2010) ...................................................................................10

*United States v. Adeyemi*,
   478 F. Supp. 3d 489 (E.D. Pa. 2020)..................................................12

*United States v. Aguilar*,
   2020 WL 6081779 (N.D. Cal. Oct. 15, 2020) .....................................21

*United States v. Alam*,
   960 F.3d 831 (6th Cir. 2020) ..................................................................8

*United States v. Austin*,
   2021 WL 1137987 (E.D. Mich. Mar. 25, 2021)........................... 16, 21

*United States v. Baeza-Vargas*,
   2021 WL 1250349 (D. Ariz. Apr. 5, 2021) ...........................................16

*United States v. Brown*,
   2021 WL 1154207 (S.D.N.Y. Mar. 26, 2021)......................................18

*United States v. Concepcion*,
   2021 WL 50852 (E.D. Pa. Jan. 6, 2021) ..............................................20

*United States v. Del Rosario Martinez*,
   2021 WL 956158 (S.D. Cal. Mar. 10, 2021).......................................18

*United States v. Edison*,
   2020 WL 3871447 (D. Minn. July 9, 2020).........................................21

*United States v. Elias*,
   984 F.3d 516 (6th Cir. 2021) ........................................................ 9, 10

*United States v. Figueroa*,
   2021 WL 1122590 (E.D. Cal. Mar. 24, 2021)......................................17

*United States v. Garcia*,
  2021 WL 719763 (E.D. Pa. Feb. 23, 2021)........................................................21

*United States v. Gonzalez*,
  2021 WL 662496 (E.D. Pa. Feb. 19, 2021)........................................................20

*United States v. Greenlaw*,
  2021 WL 1277958 (D. Me. Apr. 6, 2021)..................................................... 16, 18

*United States v. Gunn*,
  980 F.3d 1178 (7th Cir. 2020) ............................................................................10

*United States v. Hegyi*,
  No. 2:17-cr-82, 2020 WL 7090710 (N.D. Ind. Dec. 4, 2020)............................13

*United States v. Hilario*,
  2021 WL 322899 (E.D. Pa. Feb. 1, 2021)..........................................................20

*United States v. Irizzary*,
  2021 WL 735779 (E.D. Pa. Feb. 25, 2021)........................................................20

*United States v. Jackson*,
  2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) .....................................................16

*United States v. Jackson*,
  2021 WL 806366 (D. Minn. Mar. 3, 2021).........................................................17

*United States v. Jones*,
  980 F.3d 1098 (6th Cir. 2020) ..............................................................................9

*United States v. Kariblghossian*,
  2021 WL 1200181 (C.D. Cal. Mar. 29, 2021) ...................................................18

*United States v. Kincaid*,
  802 F. App'x 187 (6th Cir. 2020).......................................................................22

*United States v. Kincaid*,
  805 F. App'x 394 (6th Cir. 2020).......................................................................22

*United States v. King*,
   2021 WL 736422 (S.D.N.Y. Feb. 24, 2021) .......................................................17

*United States v. Lisi*,
   440 F. Supp. 3d 246 (S.D.N.Y. 2020) ................................................................19

*United States v. Lohmeier*,
   2021 WL 365773 (N.D. Ill. Feb. 3, 2021) ..........................................................17

*United States v. Lucero*,
   2021 WL 1297828 (S.D. Cal. Apr. 7, 2021) .......................................................21

*United States v. Martinez*,
   2021 WL 718208 (D. Ariz. Feb. 24, 2021) .........................................................17

*United States v. Mascuzzio*,
   2021 WL 794504 (S.D.N.Y. Mar. 2, 2021) .........................................................17

*United States v. McBride*,
   2021 WL 354129 (W.D.N.C. Feb. 2, 2021) .........................................................17

*United States v. McGee*,
   992 F.3d 1035 (10th Cir. 2021) ..........................................................................10

*United States v. Murphy*,
   No. 15-20411, 2020 WL 2507619 (E.D. Mich. May 15, 2020) ....................…....2

*United States v. Neal*,
   No. 2:08-cr-00628, 2020 WL 5993290 (E.D. Pa. Oct. 9, 2020) .........................12

*United States v. Pearson*,
   2020 WL 7706618 (E.D. Mich. Dec. 29, 2020) ..................................................21

*United States v. Piles*,
   2021 WL 1198019 (D.D.C. Mar. 30, 2021) ........................................................17

*United States v. Polnitz*,
   2020 WL 1139836 (E.D. Wis. Mar. 9, 2020) ......................................................19

*United States v. Pruitt*,
    2021 WL 1222155 (N.D. Tex. Apr. 1, 2021)......................................................17

*United States v. Raia*,
    954 F.3d 594 (3d Cir. 2020) ........................................................................ 8, 13

*United States v. Reynoso*,
    2021 WL 950081 (D. Mass. Mar. 12, 2021) .......................................................17

*United States v. Richards*,
    No. 12-20372, 2021 WL 912389 (E.D. Mich. Mar. 10, 2021) .............................9

*United States v.*
    *Roeder*, 807 F. App'x 157 (3d Cir. 2020) ........................................................13

*United States v. Roper*,
    No. 16-335, 2021 WL 963583 (E.D. Pa. Mar. 15, 2021) .....................................6

*United States v. Ruffin*,
    978 F.3d 1000 (6th Cir. 2020) ................................................................... 21, 22

*United States v. Sapp*,
    No. 14-CR-20520, 2020 WL 515935 (E.D. Mich. Jan. 31, 2020) ......................12

*United States v. Shah*,
    No. 16-20457, 2020 WL 1934930 (E.D. Mich. Apr. 22, 2020)..........................12

*United States v. Sherwood*,
    986 F.3d 951 (6th Cir. 2021) ...............................................................................22

*United States v. Singh*,
    2021 WL 928740 (M.D. Pa. Mar. 11, 2021) .......................................................18

*United States v. Smith*,
    2021 WL 364636 (E.D. Mich. Feb. 3, 2021) ................................................ 18, 19

*United States v. Somerville*,
    463 F. Supp. 3d 585 (W.D. Pa. 2020) .................................................................14

*United States v. Tartaglione*,
   2020 WL 3969778 (E.D. Pa. July 14, 2020) .......................................................14

*United States v. Toney*,
   2021 WL 1175410 (E.D. Mich. Mar. 29, 2021)..................................................17

*United States v. White*,
   2021 WL 964050 (E.D. Mich. Mar. 15, 2021)....................................................18

*United States v. Whitsell*,
   2020 WL 3639590 (E.D. Mich. July 6, 2020)....................................................20

*United States v. Willis*,
   382 F. Supp. 3d 1185 (D.N.M. 2019).......................................................... 12, 19

**Statutes**

18 U.S.C. § 3553 .......................................................................................*Passim*

18 U.S.C. § 3582 ................................................................................................23

18 U.S.C. § 3582(c)(1)(A) ...................................................................... 1, 2, 7, 8, 21

18 U.S.C. § 3582(c)(2)........................................................................................10

18 U.S.C. § 3621(b) ...........................................................................................2

28 U.S.C. § 994(t) ..............................................................................................9

First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239
   (Dec. 21, 2018) ...............................................................................................7

**Other Authorities**

USSG § 1B1.13.............................................................................................. 10, 13

https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf ....6

https://www.businesswire.com/news/home/20210401005365/en/ ........................15

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ................................................................ 14, 20

https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm ...............................16

https://www.fda.gov/media/144416/download........................................................15

www.bop.gov/coronavirus/............................................................................ 4, 5, 7

Defendant Michael Winans, Jr. seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Court should deny his motion, because the defendant (1) has not exhausted his administrate remedies; (2) declined a vaccination against COVID-19 and barely presents a medical condition (borderline overweight at 25.8 BMI) that, according to CDC guidance, places him at enhanced risk during the current pandemic; and (3) has not articulated considerations under 18 U.S.C. § 3553(a) that justify compassionate release.

## I.   BACKGROUND

### A.   Criminal Conduct

Between October 2007 and September 2008, Winans operated the Winans Foundation Trust. Exploiting his family's name, he preyed upon members of church communities, as well as others, by selling them fake shares of Saudi Arabian crude oil bonds and promising returns of 100% within sixty days. He was so successful with his scam that he raised over $8 million from more than 1000 victims. (Sent. Hrg., ECF No. 19, PageID.133).

In reality, Winans pocketed some of the money, and like other Ponzi schemes, distributed some of the new investor money to prior investors to keep the scheme afloat. When the truth came out and Winans's fraud was exposed, more than 577 victims were still owed money. (PSR ¶¶ 15, 16).

Winans pled guilty to one count of wire fraud, and on March 1, 2013, the

Court sentenced him to 165 months in custody. (ECF No. 13, PageID.68). Winans is serving his sentence at FCI Fort Dix, a low security correctional institution in New Jersey. To date, he has served approximately 97 months of his sentence.

While in custody, Winans has demonstrated good behavior. He was sanctioned for a mail incident on April 7, 2016, but otherwise he has not had any disciplinary problems. (Ex. 1, Chronological Disciplinary Record). Because of good conduct, he is projected to be released on February 8, 2025.

### B.    Request for Compassionate Release

Winans moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), or in the alternative, he requests that the Court allow him to finish his sentence via home confinement. (ECF No. 46, PageID.840).[1] To support his motion, he claims to be obese (BMI > 30) and have severe allergies, and he alleges there is an "out-of-control outbreak of the Coronavirus at FCI Fort Dix." (*Id.*) (*see also id.* at PageID.844). He also cites his progress toward rehabilitation as a reason to grant a sentence reduction. (*Id.* at PageID.840). Finally, because of an alleged lack of adequate medical care at FCI Fort Dix, he "fear[s] that if [he] were to contract

---

[1]This Court does not have authority to grant a transfer to home confinement or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *4 (E.D. Mich. May 15, 2020) (Cox, J.) (noting the court cannot order BOP to transfer a defendant to home confinement, but it can reduce a sentence under § 3582(c)(1)(A) and order supervised release).

Covid-19, the lack of care could result in serious consequences, even death." (*Id.* at PageID.846).

However, Winans never submitted a request for compassionate release to the warden. According to BOP administrators, he requested home confinement, which the warden denied, but they have no records regarding him requesting compassionate release. (Ex. 2, BOP Admin. Records). Winans seems to acknowledge this lack of administrative exhaustion; his motion references his request for home confinement, but it is silent as to whether he requested compassionate release. (ECF No. 46, PageID.841–42).

The undersigned obtained Winans's medical records for the past year from BOP, which are filed under seal as Exhibit 3. The records reveal that Winans, who is 39 years old, (Ex. 3, p. 001), presents as borderline overweight with a BMI of 25.8. (*Id.* at 006). This condition appears well-controlled without medication. He tested negative for COVID-19 on January 20, 2021 and has been counseled on how to protect himself from COVID-19 transmission. (*Id.* at 003, 007). Most notably, he was offered the Pfizer COVID-19 vaccine on March 22, 2021, but he declined. (*Id.* at 016); (*see also* Ex. 4, Vaccination Record, filed under seal).

## C.    BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was

prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. Therefore, the primary focus should be on considerations specific to the defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, pursuant to the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative has helped lead to a dramatic decrease in the total BOP population, which in turn has increased

4

opportunities for social distancing and reduced the strain on BOP resources.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But it is notable that the rate of deaths in federal prisons has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

Specifically, as it relates to Winans, BOP's aggressive efforts have extended to FCI Fort Dix. That institution houses 2875 inmates. At present, there are zero inmates who are reported positive. There are also 1775 current inmates who previously tested positive and have recovered. There have been two COVID-related deaths at this institution. The latest statistics are available at www.bop.gov/coronavirus.

### D.    Vaccinations

BOP is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to

ensure that BOP receives the COVID-19 vaccine as it becomes available. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine to do so.

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of this time, BOP has administered a total of 185,684 doses to staff and inmates nationwide. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, No. 16-335, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021).

At FCI Fort Dix, where Winans is held, BOP has fully vaccinated 247 staff members and 1484 inmates (which is 51.6% of the current inmate population, and does not account for those additional inmates who declined vaccination, such as Winans himself).

BOP's guidance to its health services professionals is available online at:

https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf.

6

The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is updated every weekday and available at https://www.bop.gov/coronavirus/.

## II.  ARGUMENT

Winans has not exhausted his administrate remedies regarding compassionate release, and for that reason alone, the Court should deny his motion. Even on the merits, however, Winans has not established "extraordinary and compelling" reasons to reduce his sentence because he refused a COVID-19 vaccine and has only a borderline CDC risk factor. Moreover, the § 3553 factors and the time left on his sentence do not support his request.

### A.  Binding authority prohibits the Court from granting release, because Winans has not satisfied the statutory exhaustion requirement

The Court should dismiss Winans's motion, because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Until recently, only the Bureau of Prisons could move for compassionate release. The First Step Act of 2018 amended the statute, permitting defendants to move for it too. First Step Act § 603(b), Pub. L. No. 115-319, 132 Stat. 5194, 5239 (Dec. 21, 2018).

But the provision permitting a defendant-initiated motion includes an exhaustion requirement. *Id.* A district court may not grant a defendant's motion for

7

compassionate release unless the defendant files it "after" the earlier of (1) the defendant "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). As the Sixth Circuit held in *Alam*, this statutory exhaustion requirement is "a mandatory condition" that "must be enforced" when the government raises it. *Id.* at 832–36; *accord United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Winans has not complied with § 3582(c)(1)(A)'s mandatory exhaustion requirement, because he never requested compassionate release from the warden. (Ex. 2, Admin. Records, p.1). Rather, his attorney requested home confinement, and BOP denied his request. (*Id.*; *see also id.* at p.2). Hence, Winans's motion for should be dismissed for failure to exhaust. *Alam*, 960 F.3d at 836.

## B.   Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1)  in any case—

(A)   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)   extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Under Sixth Circuit law, the Court must engage in a three-step inquiry before granting any motion for compassionate release: (1) whether extraordinary and compelling reasons justify a sentence reduction; (2) whether any reduction is consistent with federal sentencing policies; and (3) whether relevant sentencing factors under 18 U.S.C. § 3553(a) support a reduction. *United States v. Richards*, No. 12-20372, 2021 WL 912389, at *2 (E.D. Mich. Mar. 10, 2021) (Cox, J.) (citing *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) & (*United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)).

Title 28 U.S.C. § 994(t) provides that "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone

9

shall not be considered an extraordinary and compelling reason."[2]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Although the Sixth Circuit has concluded that this policy statement is not currently binding in connection with motions filed by defendants, *see Elias*, 984 F.3d at 519, the courts of appeals have recognized that it continues to provide important "guideposts." *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021); *see United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the

---

[2]The inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon v. United States,* 560 U.S. 817, 827–28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)     Medical Condition of the Defendant.—

     (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii)    The defendant is—

          (I)     suffering from a serious physical or medical condition,

          (II)    suffering from a serious functional or cognitive impairment, or

          (III)   experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.—

     (i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

     (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

11

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *See, e.g.*, *United States v. Neal*, No. 2:08-cr-00628, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020); *United States v. Adeyemi*, 478 F. Supp. 3d 489, 512 (E.D. Pa. 2020). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (citations omitted). That statutory requirement means that a defendant's reasons for release must satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"— meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold.

Winans has satisfied neither.

### C.    COVID-19 and Compassionate Release

The COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020); *United States v. Hegyi*, No. 2:17-cr-82, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020)).

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" under U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), because the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL

13

3969778, at *5–6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020)).

The CDC's list of risk factors was most recently updated on May 13, 2021. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. It reports a list of conditions that can make a person "more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[3]

## C.   The Defendant's Circumstances

### 1.   No "extraordinary and compelling reason" because Winans refused the vaccine

Winans cannot present an "extraordinary and compelling reason" because he has declined vaccination. On March 22, 2021, Winans was offered the Pfizer COVID-19 vaccine, and he refused it. (Ex. 4, Vaccination Record, filed under

---

[3] Although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45." Winans is only 39.

seal). He has no known medical contraindication for the vaccine. Thus, his motion for compassionate release should be denied for this reason.

Although the government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC presents an extraordinary and compelling circumstance, that circumstance no longer exists in this case. Winans was offered a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

Various studies continue to confirm the efficacy of the vaccines. On April 1, 2021, Pfizer reported its follow-up study on the 44,000 participants in its Phase 3 trial. It found that the vaccine was 91.3% effective against COVID-19, measured seven days through up to six months after the second dose, across age, gender, race, and ethnicity demographics, across participants with a variety of underlying conditions, and during a period through March 13, 2021, when variants were circulating. Pfizer further found that the vaccine was 100% effective against CDC-defined severe disease and 95.3% effective against FDA-defined severe disease. https://www.businesswire.com/news/home/20210401005365/en/.

15

The CDC likewise recently reported the effectiveness of the Pfizer vaccine in preventing infection during the same period, concluding that its extensive data "reinforce CDC's recommendation of full 2-dose immunization with mRNA vaccines." https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm (Mar. 29, 2021).

Thus, Winans—notwithstanding the risk factor he presents (slightly overweight)—does not present any extraordinary and compelling reason allowing compassionate release. For this reason, the motion should be denied. *See, e.g.*, *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz. Apr. 5, 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release."); *United States v. Austin*, 2021 WL 1137987, *2 (E.D. Mich. Mar. 25, 2021) (Cleland, J.) ("Allowing federal prisoners to qualify for compassionate release by declining to receive a COVID-19 vaccine, without justification, would discourage prisoners from becoming vaccinated."); *United States v. Jackson*, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021); *United States*

16

*v. Jackson*, 2021 WL 806366, at *1–2 (D. Minn. Mar. 3, 2021); *United States v. Williams*, 2021 WL 321904 (D. Ariz. Feb. 1, 2021); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021).

Nearly all courts agree with these views. *See, e.g.*, *United States v. Toney*, 2021 WL 1175410, at *1 (E.D. Mich. Mar. 29, 2021) (Levy, J.); *United States v. Martinez*, 2021 WL 718208, at *2 (D. Ariz. Feb. 24, 2021); *United States v. Figueroa*, 2021 WL 1122590, at *5 (E.D. Cal. Mar. 24, 2021); *United States v. Piles*, 2021 WL 1198019, at *3 (D.D.C. Mar. 30, 2021); *United States v. Reynoso*, 2021 WL 950081, at *2 (D. Mass. Mar. 12, 2021); *United States v. King*, 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021); *United States v. Mascuzzio*, 2021 WL 794504, at *3 (S.D.N.Y. Mar. 2, 2021); *United States v. McBride*, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021); *United States v. Pruitt*, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021).

Winans makes no mention of the vaccines, but other defendants have contested this consensus, pointing out that the vaccines may not be 100% effective, that they were not tested in a congregate setting, that they may not be effective for all individuals, that variants may emerge that bypass the vaccines, and that the vaccines may cause side effects. These courts and others have almost uniformly rejected these arguments.

The prevailing view is that "absent some shift in the scientific consensus,

17

vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.); *see also, e.g.*, *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) ( "Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19."); *United States v. Kariblghossian*, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021); *United States v. Brown*, 2021 WL 1154207, at *3 (S.D.N.Y. Mar. 26, 2021); *United States v. Del Rosario Martinez*, 2021 WL 956158, at *3 n.10 (S.D. Cal. Mar. 10, 2021); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021)).

It is possible that the scientific consensus may shift dramatically if vaccine-resistant variants emerge or the vaccines prove less efficacious than studies to date suggest. If those possibilities materialize, nothing will prevent Winans from filing another motion for compassionate release. *United States v. Singh*, 2021 WL 928740, at *3-4 (M.D. Pa. Mar. 11, 2021) ("[F]uture research [may] demonstrate that current, or future, COVID-19 variants mitigate the effectiveness of the Moderna vaccine to such an extent that the vaccine no longer provides individuals with effective protection. However, Singh has not demonstrated that such is the case today and, it bears emphasizing, the burden falls upon Singh to demonstrate

18

that compassionate release is warranted.").

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare—and possibly eliminates entirely—the risk of severe disease from the virus.

The result therefore will not be different if Winans changes his mind and takes the vaccine, as all public health officials advise, as that action would also preclude compassionate release grounded on COVID-19. *See, e.g.*, *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.). Absent a dramatic change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end this unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020).

At present, Winans does not present any such condition.

## 2. Even ignoring Winans's refusal of the vaccine, his only risk factor—being mildly overweight—does not warrant compassionate release

The only risk factor that Winans presents is being borderline overweight with a with a body mass index (BMI) of 25.8. The CDC previously stated that being overweight, marked by a BMI of between 25 and 30, "might" present a risk of a severe outcome from COVID-19. More recently, on March 29, 2021 and again on May 13, 2021, the CDC revised its list of risk factors to state that any BMI over 25 "can make you more likely" to suffer severe disease.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The government maintains that this condition, where a vaccine has not been offered, qualifies as an "extraordinary and compelling" reason under present circumstances. The government recognizes, however, that courts have often denied compassionate release based on mild obesity alone, particularly where the defendant is relatively young and does not present any related ailment.[4] In

---

[4]*See, e.g.*, *United States v. Whitsell*, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) (Drain, J.) (declines to view obesity alone as sufficient); *United States v. Gonzalez*, 2021 WL 662496, at *2 (E.D. Pa. Feb. 19, 2021) ("numerous courts in this Circuit have held that a BMI around or moderately above 35 is insufficient to present an extraordinary and compelling reason"); *United States v. Irizzary*, 2021 WL 735779, at *6 (E.D. Pa. Feb. 25, 2021) (BMI of 33.1 of 38-year-old is not an extraordinary factor); *United States v. Concepcion*, 2021 WL 50852, at *7 (E.D. Pa. Jan. 6, 2021) (BMI of 32.2 does not justify release); *United States v. Hilario*, 2021 WL 322899, at *3 (E.D. Pa. Feb. 1, 2021) (youth and mild obesity do not

20

addition, courts have adhered to that view following the March 29, 2021 revision.
*See, e.g.*, *United States v. Lucero*, 2021 WL 1297828, at *2 (S.D. Cal. Apr. 7,
2021) (BMI of 29 does not warrant release); *United States v. Pearson,* 2020 WL
7706618, at *3 (E.D. Mich. Dec. 29, 2020) (Parker, J.) (borderline obesity in 25-30
BMI range is not sufficient).

The Court need not adopt that reasoning here, however, given Winans's
refusal to accept the vaccine and personal circumstances, as set forth below, which
weigh against relief.

### 3.  The § 3553(a) factors also counsel against compassionate release

Even if Winans were at elevated medical risk, the Court must consider the
factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate
before relief can be granted. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to
establish that the § 3553(a) factors support relief is an independent basis for
denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09
(6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir.
2020) (upholding denial of compassionate release based on the § 3553(a) factors);

---

constitute extraordinary and compelling reasons); *United States v. Garcia*, 2021
WL 719763, at *4 (E.D. Pa. Feb. 23, 2021) (a BMI of 31.8 and a history of
smoking ten years earlier do not present an extraordinary circumstance); *United
States v. Edison*, 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (obesity alone
(BMI of 35.4) is insufficient); *United States v. Aguilar*, 2020 WL 6081779, at *4
(N.D. Cal. Oct. 15, 2020) (relief denied to 27-year-old with BMI of 37.5).

*United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if Winans could establish extraordinary and compelling reasons for release, the § 3553(a) factors should still disqualify him.

For starters, Winans's long remaining sentence weighs heavily against release. This Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. This Court sentenced Winans to 165 months, and he has only served approximately 97 months (58.8% of his sentence). BOP has already considered his good behavior

while in custody via his expected early release date; his conduct while incarcerated does not merit a 41.2% reduction in his sentence.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with many years left on his sentence, like Winans, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

At sentencing, the Court noted that Winans's crime was a "very, very serious offense that has ruined many lives." (ECF No. 19, PageID.132). One victim noted in a letter that she and her family "lost [their] savings [and their] children's college investments" and her "daughter had to enlist in the Army." (*Id.* at PageID.133). Another noted how Winans "stood in church pulpits … and [] guaranteed that we would not lose on this…." (*Id.* at PageID.134). Yet another wrote, "This silver-tongued con man used his family name to give us a false sense of trust, that he was an upstanding person, even went to far as to stand up in front of a church and said, 'Would I be using this forum if I wasn't being truthful with you?'" (*Id.* at PageID.135).

23

The Court noted that it did not "view [Winans] as a future threat to engage in criminal conduct," (*id.* at PageID.137), but nonetheless, it imposed a 165-month sentence to reflect the seriousness of the offense and to deter others. (*Id.* at PageID.139–41). Reducing his sentence now would undermine the Court's rationale in imposing its sentence.

At present, these considerations—including Winans's refusal to accept vaccination and BOP's strenuous efforts to protect inmates against the spread of COVID-19—counsel strongly against relief. In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.[5]

## III.   CONCLUSION

Winans's motion should be denied.

---

[5] If, however, the Court concludes that immediate release is warranted, the government respectfully requests that the Court order a 14-day quarantine and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*/s/Brandon C. Helms*
Brandon C. Helms
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313)226.9639
Email: Brandon.Helms@usdoj.gov

Dated: June 1, 2021

25

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 1, 2021, I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system.

I further certify that I sent a copy of the foregoing paper via U.S. mail to the

following non-ECF participant:

Michael Winans
Reg. No. 47697-039
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

*/s/Brandon C. Helms*
Brandon C. Helms
Assistant United States Attorney